2000 OK CR 25

Karl Lee MYERS, Appellant,

v.

STATE of Oklahoma, Appellee.

No. D 1998–646.

Court of Criminal Appeals of Oklahoma.

Dec. 8, 2000.

Rehearing Denied Jan. 29, 2001.

Joe P. Robertson, William R. Higgins, Capital Trial Division, Indigent Defense System, Tulsa, OK, Attorneys for Defendant.

Perry W. Hudson, Janet Chesley, Capital Direct Appeals Division, Indigent Defense System, Norman, OK, Attorneys for Appellant.

Gene Haynes, District Attorney, Raymond L. Hasselman, Assistant District Attorney, Claremore, OK, Attorneys for the State.

W.A. Drew Edmondson, Attorney General of Oklahoma, William L. Humes, Assistant Attorney General, Oklahoma City, OK, Attorneys for Appellee.

## OPINION

LILE, Judge:

¶ 1 Karl Lee Myers was convicted, by jury, of Murder in the First Degree (21 O.S.1991, § 701.7) in the District Court of Rogers County, Case No. CF–96–233, before the Honorable Dynda Post, District Judge. After the sentencing stage, the jury found the existence of four aggravating circumstances: the murder was especially heinous, atrocious, or cruel; the Defendant was previously convicted of a felony involving the use or threat of violence; the existence of a probability that the Defendant would commit criminal acts of violence that would constitute a continuing threat to society; and the murder was committed for the purpose of avoiding or preventing a lawful arrest or prosecution; and set punishment at death. 21 O.S.1991, § 701.12(1), (4), (5) & (7). The trial court entered Judgment and Sentence in accordance with the jury's verdict. From this Judgment and Sentence, Myers has perfected his appeal.

## FACTS

¶ 2 The victim, Cindy Marzano, and Appellant were acquaintances. She left home for work on March 14, 1996, bearing no bruises or wounds on her face or head. She drove her 1984 silver Chevrolet Impala to work for her 1:00 p.m. to 9:00 p.m. shift. While at work she spoke to Appellant twice between 7:00 p.m. and 8:00 p.m. and was overheard agreeing to meet Appellant after work. She checked out at 9:09 p.m. and was seen thereafter at Denny's restaurant where she and a man remained about thirty (30) minutes.

¶ 3 At 11:51 p.m., Appellant was at a convenience store, where he had been a regular customer, and remained two to two and one-half hours. He washed his truck while there and told the clerk he had been at a relative's house. At 12:30 a.m., Cindy Marzano was found floating face down in the water at the Highway 33 Landing on the navigation channel near the Port of Catoosa. Her blouse and bra were pulled up and she had bruises on her forehead, upper left arm and neck. She had cuts on her face and an abrasion between her shoulder blades. She had bruises on her right thigh and left leg. These injuries were suffered prior to death. Asphyxiation was determined to be the cause of death. DNA testing established that spermatozoa found in her vagina matched Appellant's DNA.

¶ 4 Appellant first denied that he had seen the victim that night. He finally admitted talking to the victim that night at her work. He said they agreed to meet at Denny's for coffee, and he was home by 11:45 p.m. He denied any physical contact with the victim. He later admitted to having consensual sex with the victim that night.

¶ 5 Inmate Sidney Byrd testified that Appellant admitted killing two women, and further admitted that (concerning Cindy Marzano) "he was fucking her from behind when he strangled her and she died."

## JURY SELECTION ISSUES

¶ 6 In Proposition I, Appellant complains that the trial court improperly refused to excuse prospective juror, Janice Irene Riggs, on the grounds that she was unable to consider all three punishment options: life, life without parole, and death. We said in *Humphreys v. State*, 1997 OK CR 59, ¶ 3, 947 P.2d 565, 570–71:

"The decision whether to disqualify a prospective juror for cause rests in the trial court's sound discretion whose decision will not be disturbed unless an abuse of discretion is shown. *Spears v. State*, 900 P.2d 431, 437 (Okl.Cr.), *cert. denied*, 516 U.S. 1031, 116 S.Ct. 678, 133 L.Ed.2d 527 (1995); *Allen v. State*, 862 P.2d 487, 491 (Okl.Cr.1993), *cert. denied*, 511 U.S. 1075, 114 S.Ct. 1657, 128 L.Ed.2d 375 (1994). To determine if the trial court properly excused a prospective juror for cause, this Court will review the entirety of the juror's voir dire examination. *Carter v. State*, 879 P.2d 1234, 1244 (Okl.Cr.1994), *cert. denied*, 513 U.S. 1172, 115 S.Ct. 1149, 130 L.Ed.2d 1107 (1995). To withstand a challenge for cause concerning punishment

issues, a venireperson must be willing to consider all the penalties provided by law and not be irrevocably committed to any one punishment option before the trial has begun. *Carter*, 879 P.2d at 1244."

¶ 7 The Court first inquired of prospective Juror Riggs whether she could consider all three of the legal punishments to which the prospective Juror replied, "Yes, ma'am." When examined by Appellant's trial counsel the prospective Juror stated that the death sentence "was not always appropriate" in circumstances of first degree murder although she opined it was "more of the time" as opposed to less of the time. Although at one time the prospective Juror stated that if somebody is charged with killing somebody and guilt is proved that he should be put to death, she later explained: "I will say it again, in most instances, yes." Under further examination by Appellant's trial counsel, the prospective Juror stated that she would "more than likely" vote for the death sentence, but that she would consider life or life without parole. At this point, Appellant's trial counsel moved to excuse the juror for cause. The court further examined the juror at which time the juror responded that "I could certainly weigh all three" and that by weigh she meant consider. Appellant's trial counsel asked numerous further questions on different issues and ultimately passed prospective Juror Riggs for cause.

¶ 8 It is clear that this prospective juror was willing to consider all three possible punishments for First Degree Murder, and the trial court properly refused to excuse her for cause. *Humphreys*, 1997 OK CR 59, ¶ 3, 947 P.2d at 570.

¶ 9 Further, apparently even Appellant's trial counsel believed the juror to be legally qualified after Judge Post's follow up questioning because he ultimately passed the juror for cause. The right to challenge any juror for cause is a statutory right which may be waived by the defendant. *Plantz v. State*, 1994 OK CR 33, ¶ 24, 876 P.2d 268, 277, *cert. denied*, 513 U.S. 1163, 115 S.Ct. 1130, 130 L.Ed.2d 1091 (1995).

¶ 10 Thereafter, but prior to the jury being sworn, Appellant renewed his objection to prospective Juror Riggs, even though he had previously excused her by peremptory, and stated that he would have used his last peremptory challenge to excuse Mr. Smith if Ms. Riggs had been excused for cause by the court. In the interim, Appellant had passed for cause prospective jurors, Mr. Smith and Ms. Bunt.[1]

¶ 11 We have held:

"The failure of the trial court to remove a prospective juror who unequivocally states that he is unwilling to follow the law during the penalty phase by considering a life sentence is error. The record reflects that defense counsel challenged the prospective juror for cause, and when the court denied the challenge, defense counsel used a peremptory challenge. All of appellant's peremptory challenges were subsequently used; but as there is nothing in the record to show that any juror who sat on the trial was objectionable, we are unable to discover any grounds for reversal."

*Ross v. State*, 1986 OK CR 49, ¶ 11, 717 P.2d 117, 120 (citations omitted), *aff'd sub nom*, *Ross v. Oklahoma*, 487 U.S. 81, 83–84, 108 S.Ct. 2273, 2276, 101 L.Ed.2d 80, 87 (1988). In affirming *Ross v. State*, the U.S. Supreme Court said:

"On further examination by defense counsel, [Prospective Juror] Huling declared that if the jury found petitioner guilty, he would vote to impose death automatically. Defense counsel moved to have Huling removed for cause, arguing that Huling would not be able to follow the law at the penalty phase. The trial court denied the motion and Huling was provisionally seated. The defense then exercised its sixth peremptory challenge to remove Huling. The defense ultimately used all nine of its challenges. . . . None of the 12 jurors who actually sat and decided petitioner's fate was challenged for cause by defense counsel."

---

1. Although Appellant claims in his reply brief that Juror Smith was prejudiced, a review of the entire record of his voir dire examination does not support that assertion.

*Ross,* 487 U.S. at 83–84, 108 S.Ct. at 2276. The Supreme Court further stated,

"Any claim that the jury was not impartial, therefore, must focus not on Huling, but on the jurors who ultimately sat. None of those 12 jurors, however, was challenged for cause by petitioner, and he has never suggested that any of the 12 was not impartial.... We conclude that petitioner has failed to establish that the jury was not impartial."

*Ross,* 487 U.S. at 86, 108 S.Ct. at 2277, 101 L.Ed.2d at 88.[2]

¶ 12 We have examined the entire record on voir dire and we find nothing to indicate that Mr. Smith, or any of the jurors who ultimately decided the case, were not impartial.

## FIRST STAGE ISSUES

¶ 13 Myers claims that evidence of other "unrelated" crimes deprived him of a fair trial. The State filed an extensive Notice of Intent to offer evidence of other crimes, seeking to offer evidence that:

1. In June of 1976, Appellant sexually assaulted and threatened to kill Bonnie Makin Hames.

2. In July and August of 1986, Appellant sexually assaulted and threatened to kill Stacey Lane Fain.

3. In April of 1993, Appellant sexually assaulted and murdered Shawn Marie Williams.

¶ 14 The State claimed that these incidents helped establish the motive for the murder of Cindy Marzano, the victim in this case. The State additionally claimed that these incidents had sufficient similarities to the murder of Cindy Marzano to establish intent. All victims were females with which he had become acquainted and were enticed to accompany him in his vehicle, taken to a remote location and injured, or threatened with injury, to obtain their silence.

¶ 15 Appellant challenged the evidence and the trial court conducted hearings to determine the issue. The trial court found that the assault on Bonnie Makin Hames was admissible to show intent, motive, and common scheme or plan. The court noted that the similarities in the case were very striking and that the probative value of the evidence was very great and outweighed the prejudicial effect to the defendant. Concerning the assaults on Stacey Lane Fain, the court reached the same conclusions. The court reached a different conclusion regarding the murder of Shawn Marie Williams and excluded that evidence. The trial court considered *Bryan v. State,* 1997 OK CR 15, ¶ 33, 935 P.2d 338, 356, *cert. denied,* 522 U.S. 957, 118 S.Ct. 383, 139 L.Ed.2d 299 (1997), which states the general rule that a defendant is to be convicted, if it all, by evidence which shows him guilty of the charged crime and not by evidence of other crimes. The trial court acknowledged the dictates of Title 12, O.S.1991, § 2404(B), which defines the limitations on admission of evidence of other crimes, to wit:

"Evidence of other crimes, wrongs, or acts is not admissible to prove the character of a person in order to show action in conformity therewith. It may, however, be admissible for other purposes, such as proof of motive, opportunity, intent, preparation, plan, knowledge, identity or absence of mistake or accident."

The trial court found that the evidence was relevant to Appellant's motive and intent to kill the victim in this case and further found that the crimes were sufficiently similar to establish a common scheme or plan.

 ¶ 16 Despite our prior cases to the contrary, "the enumerated permissible purposes for which other crimes, wrongs, or acts evidence may be admitted under [12 O.S. 1991, § 2404(B) ] of the [Oklahoma Evidence] Code are not exclusive." 2 Leo H. Whinery, *Oklahoma Evidence,* 354 (1994).[3] The literal language of Section 2404(B)—"It may, how-

---

2. The United States Supreme Court recently reiterated its holding in *Ross,* supra, in applying the same rule to federal trials. *United States v. Martinez–Salazar,* 528 U.S. 304, 120 S.Ct. 774, 780–81, 145 L.Ed.2d 792 (2000).

3. *But cf., Taylor v. State,* 1982 OK CR 8, ¶ 8, 640 P.2d 554, 557 (there are five exceptions to the rule of Section 2404(B)); and more recently, *Hopper v. State,* 1987 OK CR 78, ¶ 10, 736 P.2d 538, 540–41.

ever, be admissible for other purposes, such as ...."—clearly indicates more exceptions than those listed in the statute. Whinery, *supra.*

¶ 17 This Court has stated on more than one occasion that "consistent with the prevailing view ... the five enumerated exceptions in Section 2404(B) of the Oklahoma Evidence Code were not intended to be exclusive or exhaustive." *Anderson v. State,* 1999 OK CR 44, ¶ 12, 992 P.2d 409, 415, *cert. denied,* —— U.S. ——, 121 S.Ct. 124, 148 L.Ed.2d 79 (2000); *quoting Gideon v. State,* 1986 OK CR 112, ¶ 11, 721 P.2d 1336, 1338; *Rhodes v. State,* 1985 OK CR 16, ¶ 9, 695 P.2d 861, 863.

¶ 18 In *State v. Plaster,* 424 N.W.2d 226 (Iowa 1988), the Court allowed evidence of a defendant's sexual assault on a woman other than the prosecutrix. The court, examining Rule 404(b) of the Iowa Rules of Evidence, reasoned that the exceptions listed in the rule are not exclusive. *Id.* at 228. The Court stated that the

"key is 'whether the challenged evidence is relevant and material to some legitimate issue other than a general propensity to commit wrongful acts.... If the evidence meets this litmus test, it is prima facie admissible, not withstanding its tendency to demonstrate the accused's bad character."

*Id.* at 229 (citations omitted). A consequential fact in the Plaster case was whether the victim consented to sexual intercourse. The evidence of the other similar sexual abuse showed the likelihood that there was no consent. The evidence of the prior sexual conduct also showed the same peculiar and characteristic behavior pattern manifested in the crime charged. This conduct made it more probable that there was no consent.

■ ¶ 19 Appellant, in one of his statements, claimed that he had consensual sex with Marzano. However, similarities between the two prior acts and the present case, make it more probable that Marzano did not consent to sexual intercourse with Appellant. Further, there are striking similarities between the assaults which are probative of motive, intent, and common scheme or plan. In all three instances Appellant was acquainted with the victim; the victims were lured into automobiles; all of the victims were forcefully and sexually assaulted; the assailant threatened to kill the first two victims and did kill the third.

¶ 20 Another reason for admission was to show Appellant's motive for murder. Having received a stiff prison sentence following the Hames assault, and having been investigated following the Fain assault, although he avoided criminal charges, presents a sufficient factual basis to support the submission of the evidence to the jury as proof of motive for and as proof of intent in the instant case. The jury may well have determined that Appellant intended to kill Cindy Marzano in order to avoid punishment and investigation similar to what he endured after the other assaults.

¶ 21 Several states have adopted a "greater latitude" approach to the admission of other crimes evidence in sex crimes cases. *See State v. Davidson,* 236 Wis.2d 537, 613 N.W.2d 606, 617 n. 12 (2000). The Federal Rules of Evidence have also been expanded to include a provision for the introduction, in sexual assault cases, of "evidence of the defendant's commission of another offense or offenses of sexual assault ... for its bearing on any matter to which it is relevant." Fed. R.Evid. 413.

¶ 22 In keeping with this "greater latitude" for introduction, the court in *State v. Davidson* allowed the introduction of a sexual assault on a girl which had occurred ten years prior to the charged offense, also a sexual assault on a young girl. There were just as many differences in the assaults as there were similarities. However the court, following a "greater latitude rule," determined that the evidence was relevant to show motive, as well as common plan or scheme. *Davidson,* 613 N.W.2d at 620–21.

¶ 23 Wisconsin's rules of evidence are substantially similar to our own. Wisconsin has a "long-standing principle that in sexual assault cases ... courts permit a 'greater latitude of proof as to other like occurrences.'" *Davidson,* 613 N.W.2d at 615 (citations omitted). However, before admission, the other crimes evidence must conform to certain

rules such as: (1) whether the evidence is introduced for a proper purpose, Wis.Stat. § (rule) 904.04(2) [same as Title 12 O.S.1991, § 2404(b) ]; (2) whether the evidence is relevant pursuant to rule 904.01, and (3) whether the probative value is substantially outweighed by the danger of unfair prejudice, confusion, or delay under rule 904.03. *Davidson*, 613 N.W.2d at 614–15.

■ ¶ 24 Our holding today brings our interpretation of Title 12 O.S.1991, § 2404(B), in line with the clear language that the exceptions are not exclusive. The trial court acted properly within its discretion in determining that evidence of the Hames and Fain assaults were probative and admissible. The evidence was properly admitted under current Oklahoma law. Further, the evidence would be admissible under the "greater latitude rule" recognized today for cases involving sexual assaults.

■ ¶ 25 Appellant claims that the procedural safeguards were not followed. Appellant correctly states that the following procedural safeguards protect Appellant from the admission of unduly prejudicial evidence of other crimes: (1) the evidence must be offered for a proper purpose under § 2404; (2) the evidence must be relevant under § 2402; (3) the probative value of the evidence must outweigh its prejudicial value under § 2403; and (4) if requested, a limiting instruction on the proper use of the evidence must be given. *Blakely v. State*, 1992 OK CR 70, ¶ 10, 841 P.2d 1156, 1158–59.

■ ¶ 26 Appellant incorrectly argues that he was denied these safeguards. The trial court carefully and fully considered all of these safeguards, as shown by the record and the trial court's exclusion of evidence of the murder of Shawn Marie Williams. The trial court abuses its discretion when its decision is "a clearly erroneous conclusion and judgment; one that is clearly against the logic and effect of the facts presented in support of and against the application." *Stevens v. State*, 94 Okl.Cr. 216, 225, 232 P.2d 949, 959 (1951). We do not find an abuse of discretion here.

■ ¶ 27 Appellant also complains that the witness, Patricia Curry, testified that in July of 1996 Appellant told her that "you could dispose of women very easily" either in the soft sand in east Texas or at Rocky Point (located a short distance from the location of Cindy Marzano's body) and that the testimony constituted "other crimes evidence." In fact, this testimony related to the crime in question and not to other crimes as far as the jury was concerned (the trial court had excluded evidence of the murder of Shawn Marie Williams who in fact was found at Rocky Point). The evidence was admissible as an admission by Appellant directly relating to the murder of Marzano.

■ ¶ 28 In Proposition IV, Appellant complains for the first time on appeal that his "statutory rights were violated when the state elicited improper opinion testimony" from the medical examiner. The question now complained of was stated by the prosecutor as follows: "Question: Okay. Doctor, from your observations during the viewing, autopsy, and investigation, were you able to draw any conclusion as to or· develop any opinion that would suggest that this individual was raped?" Appellant did not object to the question nor to any of the testimony that followed. As we said in *Simpson v. State*, 1994 OK CR 40, ¶ 2, 876 P.2d 690, 693, "failure to object with specificity to errors alleged to have occurred at trial, thus giving the trial court an opportunity to cure the error during the course of trial, waives that error for appellate review. . . ." We are left then to review for plain error only, i.e. errors "which go to the foundation of the case, or which take from a defendant a right which was essential to his defense." *Simpson*, 1994 OK CR 40, ¶ 12, 876 P.2d at 695.

■ ¶ 29 Although invited by the prosecutor to give a medical opinion as to whether the victim was raped, he wisely declined, which may well explain the failure of Appellant to object to the answers that followed. The witness stated that there were things present suggestive of rape, and after thorough cross-examination, the same witness conceded, "There are aspects to the case that can support the idea that sexual intercourse was not rape." When asked by defense counsel if there was anything scientifically

conclusive, one way or the other, the witness stated, "Absolutely not."

¶ 30 The witness's medical opinion regarding whether rape occurred was that there was no scientific evidence either way; an answer helpful to Appellant. When asked about observable evidence suggestive of rape or consent, he found both (i.e., the victim's upper clothing was pulled up to expose her breasts; her lower clothing was completely intact; sperm was found in her vagina; she had multiple bruising indicative of a struggle, but no vaginal area injuries).

¶ 31 There is no plain error here. In fact, the witness was as useful to Appellant as to the State, which explains the failure to object. As the testimony actually developed, we find no conflict with the provisions of Title 12 O.S.1991, § 2702, nor of Title 12 O.S.1991, § 2403.

¶ 32 Appellant, in Proposition V, complains that twelve photographs were improperly admitted into evidence because their probative value was outweighed by their prejudicial impact on the jury. Appellant relies on *Peninger v. State,* 1991 OK CR 60, ¶¶ 7–10, 811 P.2d 609, 611, in which this Court determined that the photographs of young boys other than the victim were not relevant because they did not tend to prove an issue in the case. Appellant further relies upon *President v. State,* 1979 OK CR 114, ¶ 17, 602 P.2d 222, 225, where we first found that the photographs of the deceased were relevant and then proceeded to say, "To avoid confusion, it should be made clear that it was the needless duplication and the presentation of slides themselves which constitute the error." Appellant further relies upon *Tobler v. State,* 1984 OK CR 90, 688 P.2d 350, 355–56, and *Oxendine v. State,* 1958 OK CR 104, 335 P.2d 940, 943. In *Tobler,* the photographs which we found should have been excluded "depict[ed] the gruesome work of nature under the extreme conditions present." *Tobler,* 1984 OK CR 90, ¶ 24, 688 P.2d at 355. In *Oxendine,* the improperly admitted photographs showed "the gruesome incisions incident to the autopsy." *Oxendine,* 1958 OK CR 104, ¶ 8, 335 P.2d 940, 943. Appellant also relies upon *Jones v. State,* 1987 OK CR 103, 738 P.2d 525, 528. In *Jones,* the photographs in question were found to have added "nothing to the state's submission of proof . . ." and depicted the body in an advanced state of decomposition, covered with algae and slime. *Jones,* 1987 OK CR 103, ¶ 12, 738 P.2d at 528.

¶ 33 A review of the photographs complained of in the case reveals that neither evidence of decomposition, nor autopsy are depicted. State's exhibit 56, 57, and 58 show a frontal facial view, the left side of the face, and the right side of the face, respectively. Each photo depicts contusions or lacerations not shown in the other photographs. State's exhibit 60 shows a large abrasion on the victim's left upper arm. State's exhibit 61 shows the back of the right arm, including the elbow and forearm, revealing an abrasion and a scratch. State's exhibit 62 shows a contusion and an abrasion to the left elbow. State's exhibit 63 shows lacerations or scratches on the victim's back. State's exhibit 64 shows a patterned contusion on the left side of the abdomen. State's exhibit 66 shows a side view of the upper left leg and reveals a contusion. State's exhibit 67 shows a contusion on the back of the victim's left hand. State's exhibit 68 shows the petechiae, including a very large one, in the left eyeball of the victim, which was consistent with cause of death being asphyxiation. State's exhibit 69 shows the back of the left upper arm of the victim revealing an area of contusion and abrasion.

"For photographs to be admissible, their content must be relevant and their probative value must substantially outweigh their prejudicial effect. *Nguyen v. State,* 769 P.2d 167, *reh. denied,* 492 U.S. 938, 110 S.Ct. 27, 106 L.Ed.2d 639; *Smith v. State,* 737 P.2d 1206, 1210 (Okl.Cr.1987), *cert. denied,* 484 U.S. 959, 108 S.Ct. 358, 98 L.Ed.2d 383 (1987); *Oxendine v. State,* 335 P.2d 940, 942 (Okl.Cr.1958). When the probative value of photographs is outweighed by their prejudicial impact on the jury-that is the evidence tends to elicit an emotional, rather than rational, judgment by the jury-then they should not be admitted into evidence. *President v. State,* 602 P.2d 222, 225 (Okl.Cr.1979); *Oxendine,* 335 P.2d at 942."

*Peninger,* 1991 OK CR 60, ¶ 7, 811 P.2d at 611. Further,

"We recognize the well established rule that the admissibility of photographs is a matter within the trial court's discretion and that absent an abuse of that discretion, this Court will not reverse the trial court's ruling. *Nuckols v. State,* 690 P.2d 463, 470 (Okl.Cr.1984), *cert. denied,* 471 U.S. 1030, 105 S.Ct. 2050, 85 L.Ed.2d 323 (1985)."

*Peninger,* 1991 OK CR 60, ¶ 9, 811 P.2d at 611.

¶ 34 Each photograph shows a different injury. The photographs are not unduly gruesome, nor prejudicial. Each photograph confirmed the doctor's testimony concerning observed injuries to the victim. The photographs displayed for the jury the exact location of and size and extent of the injuries that the doctor had described in his oral testimony, both confirming and more accurately delineating the various injuries suffered by the victim.

¶ 35 The photographs complained of here were clearly relevant; they were not unduly gruesome nor prejudicial and were properly admitted into evidence.

¶ 36 Appellant complains that exhibit 68 was "particularly prejudicial" in that it shows the victim's eye held open by tweezers to show the inside of her eyelid and the outside portion of her eyeball. This photograph shows a very large petechiae which was consistent with death by asphyxiation. This sterile, clinical photograph was relevant in this case because of its importance to the conclusion of death by asphyxiation and was properly admitted. *Fairchild v. State,* 1999 OK CR 49, ¶¶ 70–71, 998 P.2d 611, 626.

¶ 37 Appellant also complains that the State was allowed to project, and thus enlarge, the photographs onto a screen during the testimony of the medical examiner. The witness referred to each enlargement, as it was displayed, describing the injuries shown on each. It would have been impossible for the entire jury panel to view the 3½ by 5 inch photographs during the actual testimony. This reasonable demonstrative aid, designed to allow all the jurors to see the exact extent of injuries as they were described by the expert witness, was entirely proper under the circumstances of this case.

¶ 38 In Proposition III, Myers challenges the sufficiency of the evidence supporting his murder conviction. Myers was charged with killing Cindy Marzano with malice aforethought and alternatively with killing her during the commission of a rape (felony murder).

¶ 39 In *Spuehler v. State,* 1985 OK CR 132, ¶ 7, 709 P.2d 202, 203–204, adopting the test established by *Jackson v. Virginia,* 443 U.S. 307, 318–319, 99 S.Ct. 2781, 2788–2789, 61 L.Ed.2d 560 (1979), we established the test for evaluating sufficiency of the evidence as "[w]hether, after viewing the evidence in the light most favorable to the State, a rational trier of fact could have found the essential elements of the crime charged beyond a reasonable doubt." Credibility of witnesses and the weight to be given their testimony is within the exclusive province of the jury. *Renfro v. State,* 1980 OK CR 6, ¶ 12, 607 P.2d 703, 706. Further, we accept all reasonable inferences and credibility choices which tend to support the jury's verdict. *Washington v. State,* 1986 OK CR 176, ¶ 8, 729 P.2d 509, 510.[4]

¶ 40 Appellant and the victim, Cindy Marzano, were acquaintances. When Ms. Marzano went to work on March 12, 1996, she had no apparent bruises or wounds nor did she receive any during her work shift that afternoon and evening. She did however meet with Appellant while at work and she agreed to meet Appellant after work. She left work at 9:09 p.m. and was at Denny's

---

4. This case involves both direct and circumstantial evidence of guilt and the *Spuehler* test, *supra,* applies. Even if the case were based solely upon circumstantial evidence we should apply *Spuehler* and not the "reasonable hypothesis" test of *Mitchell v. State,* 1994 OK CR 70, ¶ 33, 884 P.2d 1186, 1199. There is simply no logical reason for continuing to treat the situations differently.

The United States Supreme Court has long since abandoned the idea that circumstantial evidence is somehow less reliable than direct evidence. *Holland v. United States,* 348 U.S. 121, 140, 75 S.Ct. 127, 137–138, 99 L.Ed. 150 (1954); *see White v. State,* 1995 OK CR 15, ¶ 6, 900 P.2d 982, 994 (Lumpkin, J., specially concurring).

restaurant with Appellant before 10:00 p.m. Her car was found at the Denny's restaurant. At 11:51 p.m., Appellant was at a convenience store alone, where he washed his truck. Appellant told the clerk he had been at a relative's house. At 12:30 a.m. the victim was found near Highway 33 Landing near the Port of Catoosa floating face down in the water. She died of asphyxiation and was heavily bruised. DNA established that Appellant and the victim had had sexual intercourse.

¶ 41 Appellant gave conflicting stories concerning his whereabouts at the relevant times and first denied any physical contact with the victim and later admitted he had engaged in sex with her, claiming that it was consensual. Appellant gave conflicting stories about whether or not the victim had ever been in his truck. Sidney Byrd, an inmate in the county jail, testified as to conversation with Appellant, in jail, wherein Appellant admitted killing the victim.[5]

¶ 42 Bonnie Makin–Hames, sister to a friend of Appellant, was offered a ride, then taken to a rural area by Appellant and forcefully and sexually assaulted. Appellant threatened her life. Appellant went to prison as a result of the victim's complaint.

¶ 43 Stacey Fain, who lived in Appellant's home, was offered a ride to go to Wal–Mart and instead was taken to a rural area and sexually assaulted. Her life was also threatened by Appellant. Appellant was investigated but no criminal charges were filed.

¶ 44 Patricia Curry testified that shortly after the Marzano murder, Appellant bragged that women were easily disposed of at Rocky Point (near where the victim was found).

¶ 45 We find that all of the evidence, taken in the light most favorable to the State, supports the jury's verdict.

## SECOND STAGE ISSUES

¶ 46 In Proposition VIII, Appellant complains that he was tried before a jury in handcuffs in violation of 22 O.S.1991, § 15, which commands that "in no event shall he be tried before a jury in chain or shackles." This prohibition is of constitutional significance. The right to a fair and impartial trial is a basic tenet of our judicial system and violation of this statute may infringe upon the presumption of innocence. *Owens v. State*, 1982 OK CR 187, ¶¶ 4–6, 654 P.2d 657, 658–59.

¶ 47 In *French v. State*, 1962 OK CR 157, ¶ 20, 377 P.2d 501, 504, we said that the trial judge "should use every precaution within his grasp to see that the defendant is not paraded before the jury or jury panel in chains or shackles." When a violation occurs, "this Court must determine from the record whether the error was harmless beyond a reasonable doubt." *Owens*, 1982 OK CR 187, ¶ 6, 654 P.2d at 659; *see Boyle v. State*, 1977 OK CR 296, 569 P.2d 1026.

¶ 48 Myers was returned to the courtroom after the lunch recess on the second day of the sentencing stage of his trial. Approximately two jurors, coming back from lunch and passing through the courtroom on their way to the jury room, saw Appellant as his handcuffs were being removed.

¶ 49 In determining whether the error was harmless we examine: (1) whether the encounter was intentional; (2) whether the evidence against the accused was overwhelming; (3) whether the accused waived any error; and (4) whether the prejudicial viewing occurred in the courtroom. *Lowery v. State*, 1977 OK CR 167, ¶ 13, 563 P.2d 1189, 1192.

---

5. In this trial, Judge Post conducted what amounted to an in camera reliability hearing as to the admissibility of the testimony of a "jailhouse informant." The investigating officer was extensively examined concerning any deals with the witnesses. The witness was extensively examined concerning his credibility and proposed testimony concerning Appellant's statements. The court made the following finding: "I find, first of all, there has been no benefit given or derived, advantage derived, to this witness in exchange for his testimony from the State or anyone acting on behalf of the State and would note for the record that he is incarcerated at this time in the Rogers County Jail. I find the testimony of the witness to be credible and reliable and will order that the testimony only with respect to incriminating statements made on the death of Cindy Marzano will be admitted to the jury by way of testimony before them from this witness."

¶ 50 In this case, it is clear that the correctional officer's actions in bringing a handcuffed Myers into the courtroom were unintentional. He had no reason to believe that any jurors would be present at that time and he was not acting in conscious disregard of Myers' rights or out of a motive to prejudice Myers. Further, the evidence against Appellant, in the punishment stage of the proceeding was indeed overwhelming. Appellant made a timely objection and did not waive any error. Although the error occurred in the courtroom, it occurred during the lunch break and court was not in session.

¶ 51 This case is very similar, factually, to *Snyder v. State,* 1987 OK CR 121, 738 P.2d 548. In *Snyder,* the jailer brought the defendant into the courtroom in handcuffs and a juror who had returned early from lunch viewed the event. We said that "an unintentional viewing by members of the jury of a handcuffed defendant while the jury is not impaneled in the jury box is harmless error where there is no showing that the defendant suffered prejudice thereby." *Snyder,* 1987 OK CR 121, ¶ 6, 738 P.2d at 550.

¶ 52 Appellant's claim that the trial court prevented an examination of the jurors involved to determine what was seen is not supported by the record. Appellant never requested that any jurors be examined concerning the incident. We find any error to be harmless beyond a reasonable doubt.

¶ 53 In Proposition VII, Myers complains that his constitutional rights were violated by the improper admission of testimony from State's witness Charles Sharp, Sheriff of Cherokee County, Kansas, during the second stage of trial. Sharp testified that Myers had confessed that he had murdered Chink Enders in 1979. The sheriff testified that he obtained the confession after he promised Myers immunity from prosecution.

¶ 54 Appellant first claims that the promise of immunity from prosecution for the murder of Chink Enders prevented the use of the confession, as evidence of an aggravating circumstance, during the second stage proceedings of this trial. In the alternative, Appellant claims that the confession, made under the promise of immunity, was a coerced confession, thus was inadmissible in this proceeding.

¶ 55 A confession made under the promise of immunity cannot be considered a voluntary confession.

To be admissible, a confession must be "free and voluntary: that is, must not be extracted by any sort of threats or violence, nor obtained by any direct or implied promises, however slight, nor by the exertion of any improper influence."

*Brady v. United States,* 397 U.S. 742, 754, 90 S.Ct. 1463, 1471–72, 25 L.Ed.2d 747 (1970), *quoting Bram v. United States,* 168 U.S. 532, 542–43, 18 S.Ct. 183, 187, 42 L.Ed. 568 (1897); *see also, Malloy v. Hogan,* 378 U.S. 1, 7, 84 S.Ct. 1489, 1493, 12 L.Ed.2d 653 (1964). This Court has stated that "[A] confession made or induced by promise of reward or benefit ... would be deemed involuntary, and would not be admissible." *Ex parte Ellis,* 1963 OK CR 62, ¶ 18, 383 P.2d 706, 709.

¶ 56 Whether Sheriff Sharp had the authority to grant immunity is not the question here. The issue is whether the promise of immunity was used to obtain the confession. Obviously, this was the result, even though Sharp did not believe that Appellant committed the murder at the time of the promise of immunity.

¶ 57 Clearly, the confession would not have been admissible in a criminal trial against Appellant for the murder of Chink Enders. Similarly, the confession is not admissible during the second stage of a capital murder trial as evidence of an aggravating circumstance. *Pickens v. State,* 1996 OK CR 6, ¶ 12, 910 P.2d 1063, 1068.

¶ 58 Finding error in the introduction of this confession, we must determine whether the error was prejudicial to Appellant. This error is of constitutional magnitude. *Chapman v. California,* 386 U.S. 18, 24, 87 S.Ct. 824, 828, 17 L.Ed.2d 705, 710–11 (1967); *Wisdom v. State,* 1996 OK CR 22, ¶ 31, 918 P.2d 384, 393; *see also Hain v. State,* 1996 OK CR 26, ¶ 38, 919 P.2d 1130, 1141–1142, *cert. denied,* 519 U.S. 1031, 117 S.Ct. 588, 136 L.Ed.2d 517 (1996) (an error, albeit constitutional, is subject to a harmless

error analysis because it was an error in the trial process itself, and not a defect affecting the entire framework of the trial); *see also Arizona v. Fulminante*, 499 U.S. 279, 295, 111 S.Ct. 1246, 1257, 113 L.Ed.2d 302 (1991) (a majority of Justices hold that harmless error analysis applies to coerced confessions). The burden rests with the State to demonstrate beyond a reasonable doubt that the illegally obtained statement did not contribute to the sentence of death. *Pickens v. State*, 1994 OK CR 74, ¶ 7, 885 P.2d 678, 682, *overruled in part on other grounds, Parker v. State*, 1996 OK CR 19, ¶ 23, 917 P.2d .980, 986.

■ ¶ 59 This confession was part of the evidence used to prove the continuing threat aggravating circumstance. Along with this confession, the State also presented evidence that Appellant had been convicted of a prior assault with intent to rape, had killed Shawn Marie Williams subsequent to the present crime, and had previously been charged with feloniously possessing a firearm. Even without this confession, there was more than sufficient evidence to support the continuing threat aggravating circumstance. In light of the overwhelming evidence in support of this aggravating circumstance, we find the introduction of the confession was harmless beyond a reasonable doubt, because when viewed in light of all the evidence presented in aggravation, there is no reasonable probability the error contributed to the imposition of the death penalty. *See Bryson v. State*, 876 P.2d 240, 256–57 (Okl.Cr.1994), *cert. denied*, 513 U.S. 1090, 115 S.Ct. 752, 130 L.Ed.2d 651 (1995).

■ ¶ 60 Even if we were unable to make the finding above, and we disregarded the continuing threat aggravating circumstance, we have the authority to reweigh the remaining aggravating circumstances against the mitigating evidence when an aggravating circumstance is found to be invalid. *Young v. State*, 1998 OK CR 62, ¶ 53, 992 P.2d 332, 344, *cert. denied*, 528 U.S. 837, 120 S.Ct. 100, 145 L.Ed.2d 84 (1999); *Castro v. State*, 1987 OK CR 258, ¶ 4, 749 P.2d 1146, 1148, *cert. denied*, 485 U.S. 971, 108 S.Ct. 1248, 99 L.Ed.2d 446 (opinion on rehearing); *Wainwright v. Goode*, 464 U.S. 78, 86–87, 104 S.Ct.

378, 383, 78 L.Ed.2d 187 (1983). The jury also found beyond a reasonable doubt that three other aggravating circumstances existed: (1) the Defendant was previously convicted of a felony involving the use or threat of violence, (2) the murder was especially heinous, atrocious, or cruel, and (3) the murder was committed for the purpose of avoiding or preventing a lawful arrest or prosecution.

¶ 61 The jury was specifically instructed to consider whether the following mitigating evidence applied to the facts of the case: Appellant is likely to be rehabilitated; Appellant cooperated with authorities; and Appellant has been a compliant and non-violent prisoner in the past, and he is able to conform to rules of conduct while in the prison environment.

¶ 62 The evidence clearly indicated that Appellant had been previously convicted of the prior violent felony crime of assault with intent to rape. In the present case, Appellant forcibly beat and raped Cindy Marzano, then either strangled, smothered, or drowned her. The evidence further demonstrated that in the past, Appellant had been punished following similar incidents. The cause of death in this case was separate from and not a direct result of the rape. Appellant tried to dispose of Marzano's body to avoid detection. The evidence clearly supported the remaining aggravating circumstances.

¶ 63 The mitigating evidence is unconvincing and weak. Upon reweighing these remaining aggravating circumstances against the mitigating evidence, we find the death penalty is supported. Had the jury considered only these aggravating circumstances, we find beyond a reasonable doubt the jury would have sentenced Appellant to death.

■ ¶ 64 In Proposition IX, Appellant complains for the first time on appeal that certain victim impact evidence was improperly admitted. The only victim impact evidence offered was the written statement of the victim's husband. In a very brief statement, Mr. Marzano told of meeting his wife when she was 18. He related that she had a 13–month–old son, at the time, and he thought she was the most beautiful woman he had ever seen. That she was an "old-

**1036**

fashion country girl, very caring and loving" and "that everyone loved to be around her." He stated that he wanted to share "the rest of my life with [her]." He told of the birth of two daughters and the death of the youngest. He said, "The hardest part of dealing with the death of my Michelle is watching my children grow up without a mother...." He asked for "justice to be done for Michelle and her children."

¶ 65 The evidence properly fits within the strictures of *Cargle v. State,* 1995 OK CR 77, ¶ 75, 909 P.2d 806, 828, *cert. denied,* 519 U.S. 831, 117 S.Ct. 100, 136 L.Ed.2d 54 (1996), providing a quick glimpse of the victim and "showing how the victim's death is affecting or might affect the victim's survivors, and why the victim should not have been killed." *Id.*

¶ 66 There was no error here, and not surprisingly, Appellant conceded at trial that the content of the written statement of Mr. Marzano was proper. Appellant further conceded at trial that he had proper notice of the testimony. These concessions were made on the record and outside the hearing of the jury. When the trial court inquired of counsel if any further record needed to be made, Appellant made no objection based upon the admissibility of the evidence as it relates to Title 12 O.S.1991, § 2403, and made no objection that the court had not made a finding that evidence of at least one aggravating circumstance was present on the record. Mr. Marzano's statement was presented to the jury at the close of the State's second stage case in chief. We find that there was evidence supporting the aggravators alleged by the State, and we further find that the statement was not "so unduly prejudicial that it render[ed] the trial fundamentally unfair." *Payne v. Tennessee,* 501 U.S. 808, 825, 111 S.Ct. 2597, 2608, 115 L.Ed.2d 720. We find no error in the victim impact evidence offered in this case.

¶ 67 Appellant further complains that victim impact evidence operates as an improper "super aggravator," is irrelevant, and violative of the Eighth Amendment to the United States Constitution. We have previously considered and rejected such claims and see no reason to revisit them.

*Mollett v. State,* 1997 OK CR 28, ¶ 47, 939 P.2d 1, 12–13, *cert. denied,* 522 U.S. 1079, 118 S.Ct. 859, 139 L.Ed.2d 758 (1998).

¶ 68 In Proposition XII, Appellant complains that there was insufficient evidence to support the finding that the murder was committed for the purpose of avoiding lawful arrest or prosecution. "To support a finding of this aggravating circumstance the State must prove the defendant killed in order to avoid arrest or prosecution." *Powell v. State,* 1995 OK CR 37, ¶ 66, 906 P.2d 765, 781, *cert. denied,* 517 U.S. 1144, 116 S.Ct. 1438, 134 L.Ed.2d 560 (1996). A defendant's intent is critical to this proof and can be inferred from circumstantial evidence. *Romano v. State,* 1995 OK CR 74, ¶ 73, 909 P.2d 92, 119, *cert. denied,* 519 U.S. 855, 117 S.Ct. 151, 136 L.Ed.2d 96 (1996). Furthermore, there must be a predicate crime, separate from the murder, for which the defendant seeks to avoid arrest or prosecution. *Id.*

¶ 69 Here, there are sufficient facts to support this aggravating circumstance beyond a reasonable doubt. *See Salazar v. State,* 1996 OK CR 25, ¶ 7, 919 P.2d 1120, 1123, *cert. denied,* 528 U.S. 895, 120 S.Ct. 226, 145 L.Ed.2d 190 (1999). The evidence established that Appellant and the victim were acquaintances and the victim was beaten and strangled, smothered, or drowned after sexual intercourse with Appellant. The evidence further demonstrated that in the past Appellant had been punished following similar incidents. The cause of death in this case was separate from and not a direct result of the rape.

¶ 70 In Proposition XI, Appellant claims that the "especially heinous, atrocious or cruel," the "continuing threat to society," and the "committed for the purpose of avoiding or preventing a lawful arrest or prosecution" aggravating circumstances are unconstitutional.

¶ 71 In the case of *Wood v. State,* 1998 OK CR 19, ¶ 57, 959 P.2d 1, 15, we held:

"This Court has repeatedly rejected arguments on the unconstitutionality of the "continuing threat" aggravating circum-

stance and we are not persuaded to alter our prior position. *See Cooper v. State,* 889 P.2d 293, 315 (Okl.Cr.1995); *Malone v. State,* 876 P.2d 707, 715–16 (Okl.Cr.1994), and cases cited therein; *Walker v. State,* 887 P.2d 301, 320 (Okl.Cr.1994), *cert. denied,* 516 U.S. 859, 116 S.Ct. 166, 133 L.Ed.2d 108 (1995)."

¶ 72 We held in *Workman v. State,* 1991 OK CR 125, ¶¶ 24–25, 824 P.2d 378, 383, *cert. denied,* 506 U.S. 890, 113 S.Ct. 258, 121 L.Ed.2d 189 (1992),

> "Appellant also asserts that the other aggravating circumstance found by the jury, that 'there exists a probability the defendant would commit criminal act[s] of violence that would constitute a continuing threat to society,' is both unconstitutionally vague and unsupported by the evidence.... This Court has repeatedly upheld the validity of this particular circumstance. *Rojem v. State,* 753 P.2d 359, 369 (Okl.Cr.1988) [*cert. denied,* 488 U.S. 900, 109 S.Ct. 249, 102 L.Ed.2d 238 (1988) ]. *See also Barefoot v. Estelle,* 463 U.S. 880, 896–97, 103 S.Ct. 3383, 3396, 77 L.Ed.2d 1090, 1106 (1983) and *Jurek v. Texas,* 428 U.S. 262, 96 S.Ct. 2950, 49 L.Ed.2d 929 (1976)."

¶ 73 We held in *Cannon v. State,* 1995 OK CR 45, ¶ 43 & n. 54, 904 P.2d 89, 105 & n. 54, that the aggravating circumstance "especially heinous, atrocious, and cruel" as limited by this Court is not unconstitutional for vagueness.

¶ 74 We have repeatedly rejected attack on the constitutionality of the "avoid arrest" aggravating circumstance. *Alverson v. State,* 1999 OK CR 21, ¶ 75, 983 P.2d 498, 520, *cert. denied,* 528 U.S. 1089, 120 S.Ct. 820, 145 L.Ed.2d 690 (2000); *Charm v. State,* 1996 OK CR 40, ¶ 73, 924 P.2d 754, 772, *cert. denied,* 520 U.S. 1200, 117 S.Ct. 1560, 137 L.Ed.2d 707 (1997). We see no reason to revisit the issues based upon the facts of the case.

 ¶ 75 In Proposition X, Appellant complains for the first time on appeal that the trial court improperly gave an instruction which inadvertently omitted the word "physical" from the phrase "serious physical abuse." OUJI Cr (2d) 4–73 requires that the latter phrase be given to the jury. We have so held on many occasions. *Turrentine v. State,* 1998 OK CR 33, ¶ 67, 965 P.2d 955, 975; *cert. denied,* 525 U.S. 1057, 119 S.Ct. 624, 142 L.Ed.2d 562 (1998) *Mollett v. State,* 1997 OK CR 28, ¶ 56, 939 P.2d at 14; *Johnson v. State,* 1996 OK CR 36, ¶ 40, 928 P.2d 309, 318; *Richie v. State,* 1995 OK CR 67, ¶ 43, 908 P.2d 268, 278, *cert. denied,* 519 U.S. 837, 117 S.Ct. 111, 136 L.Ed.2d 64 (1996). The State correctly points out that there was no objection to the instruction as given and the error is waived; however we must examine for "plain error." *Turrentine,* 1998 OK CR 33, ¶ 67, 965 P.2d at 975.

 ¶ 76 "Plain error" is error "which go[es] to the foundation of the case, or which take[s] from a defendant a right which was essential to his defense." *Simpson,* 1994 OK CR 40, ¶ 12, 876 P.2d at 695; *see also Rea v. State,* 3 Okl.Cr. 281, 105 P. 386 (1909) (phrase first used by this Court).

¶ 77 In *Johnson,* 1996 OK CR 36, ¶ 41, 928 P.2d at 318, we said:

> "From a practical semantic standpoint, when we compare the phrase "serious physical abuse", with the phrase "serious abuse", we find the term "physical" does not address the degree of suffering required to satisfy the limitation. Rather, it addresses the type of harm which may satisfy this aggravating circumstance. In contrast, the degree of suffering is addressed by both of the words which frame it. The harm must be both serious and rise to the level of *abuse.* Those words control the standard of proof, and they were given to the jury intact."

In *Richie,* 1995 OK CR 67 ¶ 43, 908 P.2d at 278, we said:

> "This court must determine whether the failure to use the word 'physical' in the instruction did, in fact, lessen the standard of proof required to find the aggravator of 'heinous, atrocious or cruel.' We find that Instruction No. 9, as given to the jury, properly channeled the sentencer's discretion in imposing the death penalty. Furthermore, we adjudge the phrase 'serious abuse' to be commonly interpreted as referring to physical abuse in the present context."

Further, in *Hawkins v. State*, 1994 OK CR 83, ¶ 44, 891 P.2d 586, 597, *cert. denied*, 516 U.S. 977, 116 S.Ct. 480, 133 L.Ed.2d 408 (1995), we defined torture as including "great physical anguish" or "extreme mental cruelty."

¶ 78 Under the facts of this case, we find that there was sufficient evidence to support torture under both definitions ("extreme mental cruelty" or "great physical anguish") and to support "serious physical abuse." Because all of the above are available to a jury in the disjunctive, and because there is no lessening of the burden of proof, there is no error.

### PROSECUTORIAL MISCONDUCT

¶ 79 In Proposition VI, Appellant complains that he was denied due process of law because of prosecutorial misconduct. Witness Sidney Byrd testified that Appellant had introduced himself as "Killer Karl."

¶ 80 Myers argues that the reference was to what the news media called him. The State argues that Appellant preferred to be called Killer Karl. Either conclusion could conceivably be reached by persons hearing the testimony in question. The State's argument was within the range of permissible inferences or deductions arising from the evidence and was not error. *Holt v. State*, 1981 OK CR 58, ¶ 36, 628 P.2d 1170, 1171; *Glidewell v. State*, 1981 OK CR 39, ¶ 4, 626 P.2d 1351, 1353; *Brown v. State*, 1988 OK CR 49, ¶ 12, 751 P.2d 1078, 1080.

¶ 81 References to Appellant as "Killer Karl" during closing argument were likewise supported by the evidence under the same authorities. Further, Appellant did not object to any of these instances at trial. "This failure to object waives any error on appeal, except those constituting fundamental or plain error." *VanWoundenberg v. State*, 1986 OK CR 81, ¶ 15, 720 P.2d 328, 334, *cert. denied*, 479 U.S. 956, 107 S.Ct. 447, 93 L.Ed.2d 395 (1986); *Nolte v. State*, 1994 OK CR 81, ¶ 26, 892 P.2d 638, 645.

¶ 82 The repeated use of the reference "Killer Karl" (some 28 times during first stage of closing argument) gives rise to some concern as to the purpose sought to be accomplished by the prosecutor and is not condoned by this Court. However, we find no undue prejudice to Appellant and find no error, much less any plain error. *Tibbs v. State*, 1991 OK CR 115, ¶ 25, 819 P.2d 1372, 1380.

¶ 83 Appellant complains that the prosecutor misstated the evidence in the second stage closing argument. The prosecutor argued that Appellant was proud of the nickname "Killer Karl." We find this to be a reasonable comment based upon the evidence as discussed above.

¶ 84 Appellant argues that the prosecutor distorted the evidence when he argued, "Well, maybe a felon in possession of a weapon doesn't seem like a big deal compared to some of these other things, but Karl Myers in possession of a weapon I think would be a big deal to Shawn Williams." The prosecutor was referring to the shooting death of Shawn Williams and was not asserting that the gun found in defendant's possession was the same one he used to kill Williams. The prosecutor was simply arguing that possession of any gun by Appellant was not a minor offense. This argument, we find to be within the range of permissible inferences arising from the evidence. Further, there was no objection to these comments by Appellant and error is waived on appeal in the absence of plain error, which we do not find in this case.

¶ 85 Appellant complains for the first time on appeal that the prosecutor improperly evoked sympathy for the victim in his second stage closing argument when he said, "Think about what it would be like struggling with a person," and asked the jury to consider "what had to be going through her mind at the time." These arguments were made with reference to the especially heinous, atrocious, or cruel aggravating circumstance and in that context were not improper. Finding no error, we find no denial of due process.

### EFFECTIVE ASSISTANCE OF COUNSEL

¶ 86 Appellant argues that plain error occurred when Dr. Ronald Distefano testified,

without an objection from Appellant's trial counsel. We found no error in this testimony as discussed with regard to Appellant's Proposition IV and it is therefore impossible to conclude that Appellant's trial counsel was ineffective under the test established in *Strickland v. Washington,* 466 U.S. 668, 104 S.Ct. 2052, 80 L.Ed.2d 674 (1984). Counsel's performance in this instance was not deficient.

¶ 87 Appellant complains that his trial attorney provided constitutionally defective representation in not objecting to the prosecutor's reference to him as "Killer Karl." As set forth in our resolution of Appellant's Proposition VI, we found no error and thus are unable to find deficient performance under *Strickland,* supra. Likewise, we found the testimony of Sheriff Sharp to be harmless (Proposition VII) and the victim impact evidence of Mark Marzano (Proposition IX) to be proper and find no deficiency in trial counsel's performance.

¶ 88 Appellant has filed an Application For Evidentiary Hearing on Sixth Amendment Claims pursuant to Rule 3.11(B)(3)(b), *Rules of the Oklahoma Court of Criminal Appeals,* Title 22, Ch. 18, App. (2000). Affidavits attached thereto are offered to meet the burden set forth in the above rule that "the application and affidavits must contain sufficient information· to show this Court by clear and convincing evidence there is a strong possibility trial counsel was ineffective." *Id.*

¶ 89 The affidavits provided are from jail house witnesses incarcerated with Appellant and the State's witness, Sydney Byrd. All of the affidavits mirror the testimony of Ray Eugene Minnerup, an inmate residing with Myers during his incarceration, who testified that Myers did not talk to other inmates about this case.

¶ 90 Myers' impeachment of Byrd's testimony with Byrd's past criminal history would lose some of its impact if Myers had countered with multiple jail house witnesses subject to the same type of impeachment, all of whom would testify substantially the same as Minnerup. There certainly is no hint of a "strong possibility trial counsel was ineffective" in failing to call these additional cumulative and inherently dangerous witnesses.

¶ 91 An affidavit by Michael Yates, one of these inmates, includes additional statements concerning witness Byrd. Yates claimed Byrd told him he got out of jail because of his willingness to testify. The evidence at trial clearly established that Byrd got out of the county jail after he agreed to testify, but only to be sent to California to face a probation violation allegation, which was why he was originally in jail. Yates' affidavit offers no new information not already in the record. Yates supposedly heard Detective Elkins state to Byrd that "[y]ou don't have nothing to worry about," the meaning of which is unclear even in the Yates affidavit. Appellant has failed to establish the need for an evidentiary hearing, and the application is denied.

### CUMULATIVE ERROR

¶ 92 Finally, Myers argues that the errors, taken together, should result in the reversal of his conviction and sentence. We have reviewed the case to determine the effect, if any, of Myers' alleged accumulation of error. We find no such accumulation of errors. *Woods v. State,* 1984 OK CR 24, ¶ 10, 674 P.2d 1150, 1154.

### MANDATORY SENTENCE REVIEW

¶ 93 Title 21 O.S.1991, § 701.13, requires this Court to determine "[w]hether the sentence of death was imposed under the influence of passion, prejudice or any other arbitrary factor; and whether the evidence supports the jury's or judge's finding of a statutory aggravating circumstance." Sufficient evidence existed to support the finding of the four statutory aggravating circumstances. After reviewing the entire record in this case, we find that the sentence of death was not imposed because of any arbitrary factor, passion, or prejudice. The facts of this case simply warranted the penalty of death.

¶ 94 We find no error warranting reversal of Myers' conviction or sentence of death for first degree murder, therefore, the Judgment and Sentence of the trial court is, hereby, **AFFIRMED.**

STRUBHAR, P.J., LUMPKIN, V.P.J., and JOHNSON, J., concur.

CHAPEL, J.: concurs in result.

CHAPEL, J., concurring in result:

¶ 1 I concur in result with the majority's decision to affirm Myers's conviction for first degree murder. In doing so, I disagree with the majority's analysis and resolution of the issue raised in Proposition Two. The trial court erroneously admitted other crimes evidence of previous, unrelated sexual assaults to show motive and intent. Ten to twenty years before the charged crime, Myers fondled, attempted rape (without penetration) and attempted oral sex with two young women; one was twelve years old and one was thirteen. Myers was convicted and imprisoned after the first incident but was not charged after the second occurrence. These previous crimes have no relevance to charges that Myers raped and murdered an adult woman. The majority opinion erroneously holds that the evidence was admissible under our current law.

¶ 2 However, the majority does not rely on current law to dispose of this case. Instead, without explicitly saying so, the majority holds that Oklahoma should expand its use of other crimes evidence in sex crimes cases. The majority states: "[T]he evidence would be admissible under the "greater latitude rule" *recognized today* for cases involving sexual assaults."[1] This can only be interpreted as an adoption of the "greater latitude" rule. The majority would allow "greater latitude" to admit any evidence of other sexual assaults, whether or not the evidence falls within any recognized statutory exception to the general prohibition against other crime evidence.[2] The majority recognizes the "unavoidable potential for proving propensity" inherent in this evidence.[3] The majority apparently fails to realize that Oklahoma already grants the State latitude in introducing evidence of similar crimes in sexual abuse cases.[4] Further expanding this exception to the prohibition against other crimes serves no legitimate purpose. It would only ensure that the State may use evidence of previous sexual encounters to persuade a jury to convict because a defendant is generally depraved or simply has a propensity to commit sex offenses. This is precisely what the Legislature has forbidden Oklahoma courts to allow.

¶ 3 The majority's attempt to expand the other crimes exception is not only ill-conceived, it is completely unnecessary in this case. The trial court erroneously admitted the other crimes evidence here. However, that error does not require reversal. Strong circumstantial evidence convicted Myers. A well and uninjured victim arranged to meet him after she got off work, and they were seen at a restaurant. She was found injured and dead, with Myers's semen in her vagina, less than four hours later. Myers admitted meeting the victim and even suggested they had consensual intercourse. Given the State's evidence against him, Myers's story

1. Op. at 1029 (emphasis added).

2. The majority relies on *State v. Davidson*, 236 Wis.2d 537, 613 N.W.2d 606 (2000), a case confirming Wisconsin's longstanding exception granting greater latitude in other crimes evidence to cases involving sexual assault of a child. A substantial minority of states grants some form of latitude for evidence of other crimes in sexual offense cases. Of these, the majority focus on sex crimes against children. Several states allow this evidence in any sexual offense case to explain motive and intent by showing previous propensity for sexual offenses, or on the general principle that such offenses should have liberal standards of proof. *See, e.g., State v. Roscoe*, 184 Ariz. 484, 910 P.2d 635, 642 (1996) (bad acts involving sexual aberration admissible to show propensity); *Bixler v. State*, 537 N.E.2d 21, 23 (Ind.1989) ("depraved sexual instinct"); *State v. Frazier*, 344 N.C. 611, 476 S.E.2d 297, 300 (1996) (court gives liberal allowance of similar offenses in sex crimes cases); *State v. Tobin*, 602 A.2d 528, 531 (R.I.1992) ("lewd disposition or intent").

3. Op. at 1029.

4. The State may introduce evidence that the defendant has committed similar acts against different victims at different times if the circumstances show a system or plan characterized by a peculiar method of operation. *See, e.g., Eberhart v. State*, 727 P.2d 1374, 1379 (Okl.Cr.1986); *Little v. State*, 725 P.2d 606, 607 (Okl.Cr.1986); *Driver v. State*, 634 P.2d 760, 762 (Okl.Cr.1981); *Lambert v. State*, 609 P.2d 785, 787 (Okl.Cr.1980); *Turnbow v. State*, 451 P.2d 387, 390 (Okl.Cr.1969).

did not exclude every reasonable hypothesis other than guilt.[5] The evidence that Myers had previously assaulted two girls was irrelevant, but it did not unduly prejudice him. The jury could have completely disregarded that evidence in determining Myers's guilt, and its erroneous admission neither resulted in a miscarriage of justice nor substantially violated a constitutional or statutory right.[6] Since this error does not require relief, I can only conclude the majority is overreaching in order to unnecessarily expand the other crimes exception beyond the bounds of the statute or case law.

¶ 4 I also concur in result with the decision to uphold the death sentence. Evidence in second stage showed that Myers confessed to a Kansas murder after the Kansas sheriff promised him immunity. I agree with the majority's conclusion that this confession was inadmissible. I believe this evidence was highly prejudicial. Jurors had just found Myers guilty of a brutal rape and murder. They were improperly told not only that Myers had confessed to killing another person, but that he got away with it. However, the jury also heard evidence that Myers was probably responsible for the rape and death of another young woman.[7] I believe this properly admitted evidence of another murder blunted the prejudicial impact of the Kansas confession. As I agree, the error did not contribute to the imposition of the death sentence, I concur in result.

. 2000 OK CR 26

**J.R.L., Appellant,**

v.

---

**5.** *Miller v. State,* 1998 OK CR 59, 977 P.2d 1099, 1107, *cert. denied,* 528 U.S. 897, 120 S.Ct. 228, 145 L.Ed.2d 192 (1999). ·

**6.** 20 O.S.1991, § 3001.1.

**7.** This crime was unadjudicated at the time of Myers's trial. I continue to reject the use of unadjudicated crimes to support the continuing threat aggravating circumstance, and concur in result on the basis of *stare decisis.*