2007 OK CR 1

**Daniel Cole JAMES, Appellant**

v.

**The STATE of Oklahoma, Appellee.**

**No. F–2005–763.**

Court of Criminal Appeals of Oklahoma.

Jan. 8, 2007.

Steve Hightower, Tulsa, OK, attorney for defendant at trial.

James M. Hawkins, Assistant District Attorney, Tulsa, OK, attorney for State at trial.

Christine D. Little, Paul Demuro, Tulsa, OK, attorneys for petitioner on appeal.

W.A. Drew Edmondson, Attorney General of Oklahoma, Jay Schniederjan, Assistant Attorney General, Oklahoma City, OK, attorneys for respondent on appeal.

## *OPINION*

CHAPEL, Presiding Judge.

¶ 1 Daniel Cole James was tried by jury and convicted of Count I, Rape by Instrumentation in violation of 21 O.S.2001, § 1111, and Count II, Lewd Molestation in violation of 21 O.S.Supp.2003, § 1123, in the District Court of Tulsa County, Case No. CF–2004–3354. In accordance with the jury's recommendation the Honorable Gordon D. McAllister sentenced James to thirty-five (35) years imprisonment (Count I) and twenty (20) years imprisonment (Count II). James appeals from these convictions and sentences.

¶ 2 James raises eight propositions of error in support of his appeal. In Propositions I, II III, IV and V he complains of the admission and use of other crimes evidence in his case. As errors in the admission and use of this evidence require reversal, we do not consider the remaining propositions of error.

¶ 3 "defendant should be convicted, if at all, by evidence showing guilt of the offenses charged, rather than evidence indicating guilt for other crimes."[1] Other crimes evidence is not admissible to show that a person is acting in conformity with a charac-

---

1.  *Burks v. State,* 1979 OK CR 10, 594 P.2d 771, 772, *overruled in part on other grounds, Jones v. State,* 1989 OK CR 7, 772 P.2d 922.

ter trait.[2] Evidence of a prior bad act may be admissible if it is offered for a purpose specifically identified in § 2404(B).[3] The following factors are necessary for the use of other crimes evidence.[4] There must be a visible connection between the other crimes evidence and the charged crimes. The evidence must go to a disputed issue and be necessary to support the State's burden of proof, and its probative value must outweigh the danger of unfair prejudice. It must be established by clear and convincing evidence. The jury must be properly instructed on the limited purpose for which the evidence may be considered. If the evidence is offered to show a common scheme or plan, it must embrace the commission of crimes so related to each other that proof of one tends to establish the other.[5] These rules are designed to protect both parties in a criminal case.

■ ¶ 4 The other crimes evidence in this case was extensive and prejudicial. It was thirteen years old, the allegations never resulted in filed charges, and there were credibility issues. To some extent the evidence was improperly used as substantive proof of James's guilt of the charged crimes. The jury was not properly instructed on its limited use. In relying on its admission, the State refers this Court to *Myers v. State.*[6] In *Myers,* this Court created a "greater latitude rule" in sexual assault cases, allowing otherwise inadmissible other crimes evidence to be admitted, even if it was remote in time. This Court has had the opportunity to review the effect of the *Myers* "greater latitude rule" in subsequent prosecutions. We conclude that this rule is unworkable, and hereby overrule *Myers* to the extent that it created the "greater latitude rule" for other crimes evidence in sexual assault cases. The statute on other crimes evidence, 12 O.S. 2001, § 2404(B), along with our previous case law on this issue, governs the admissibility of other crimes evidence in criminal trials in Oklahoma.

2. 12 O.S.2001, § 2404(B).

3. *Blakely v. State,* 1992 OK CR 70, 841 P.2d 1156, 1158–59.

4. *Welch v. State,* 2000 OK CR 8, 2 P.3d 356, 365.

■ ¶ 5 James was unfairly prejudiced by other crimes evidence which should not have been admitted. The case must be reversed and remanded for a new trial.

### Decision

¶ 6 The Judgments and Sentences of the District Court are **REVERSED** and **REMANDED** for a new trial. Pursuant to Rule 3.15, *Rules of the Oklahoma Court of Criminal Appeals,* Title 22, Ch. 18, App. (2007), the **MANDATE** is **ORDERED** issued upon the delivery and filing of this decision.

C. JOHNSON, A. JOHNSON, and LEWIS, JJ., concur.

LUMPKIN, V.P.J., dissent.

LUMPKIN, Vice–Presiding Judge: dissents.

¶ 1 In *Myers v. State,* 2000 OK CR 25, 17 P.3d 1021, 1031, this Court stated its position regarding an area of criminal law of which we have grown all too familiar. Regardless of whether or not that familiarity comes from watching the nightly news, reading the daily newspaper, or sitting for years on an appellate court bench, most of us know that those who commit crimes of sexual assault against women and young children tend to be repeat offenders.

¶ 2 *Myers* thus recognized the unique nature of sex crimes. Sexual abuse or assault is unlike such crimes as, say, murder, theft, or selling drugs—crimes that generally arise out of poverty, greed, lack of a sense of right and wrong, or the need to feed one's chosen drug habit. As a general rule, a person commits sexual abuse, or like crimes, against an adult female out of hatred of the opposite sex, the desire to control, or because the abuser was himself or herself abused as a child. Unfortunately, sex crimes are crimes of propensity—a proclivity that rarely goes away.

5. *Burks,* 594 P.2d at 773.

6. 2000 OK CR 25, 17 P.3d 1021, 1031.

¶ 3 Even worse are sex crimes committed against children. Here, the crimes are usually committed by a relative or some other person extremely close to the child, i.e., someone who exercises dominion and control over the child or who holds a position of trust. That relationship or position of trust often allows the perpetrator to commit crimes over an extended period of time without being caught, due to the use of fear and control tactics. Such heinous acts are the result of a perverse sexual attraction, and, again, the abuser may have experienced similar abuse as a child.

¶ 4 Sexual crimes committed against women and children, therefore, present special evidentiary issues when a person charged with such crimes is bound over and brought to trial. Many such crimes go unreported due to the embarrassment and humiliation involved or because the person abused is trapped. With children, the victims are often so young when the abuse began that they have trouble narrowing down the year when the abuse first occurred. Indeed, many details of the crimes committed are often lost in the interim or confused by guilt and conflicting feelings resulting from the violation of trust.

¶ 5 And so, *Myers* took the nature of these crimes into consideration and stated an evidentiary position about what is universally known. And in doing so, it attempted to protect both women and our most vulnerable citizens, children. *Myers* thus announced a "greater latitude rule," one that simply recognized that those who commit sexual crimes are more likely to fall into one of the well-known exceptions to 12 O.S.2001, § 2404, the rule prohibiting evidence of other crimes, wrongs, or acts to prove action in conformity with one's character. That is, a person's past sexual abuse of a female or young child tends to fall within one of the "excepted" areas of section 2404, i.e., motive, opportunity, intent, preparation, plan, knowledge, identity or ab-

sence of mistake or accident. And while the prior crimes may be somewhat dissimilar to the contemporary ones charged and many years may separate the two, the fact that a person has sexually abused another places them into a fairly narrow category that touches on most of the exceptions in one way or another.

¶ 6 Today's opinion would do away with the "greater latitude rule" on the basis that the rule is "unworkable." Perhaps the more preferable word would be "uncomfortable," for the opinion gives no example of how it is unworkable. I suspect it is unworkable only in the sense that some don't want to work with it. In fact, since *Myers*, members of this Court have merely refused to follow that law established in *Myers*. Indeed, this may be more about the author of *Myers* than it is about an inability to work within the confines of that holding, which garnered four concurs and only Judge Chapel's concurring in result vote, an indication that, while he did not ascribe to the idea of greater latitude, he found nothing reversible in the case that used it.[1]

¶ 7 Of course, *Myers* did not invent the idea of greater latitude in sexual assault cases. As the case plainly states, Wisconsin has adopted the same position, and a very detailed and expansive version of that same concept may be found in the Federal Rules of Evidence, Rule 413. Apparently, the federal courts do not find the rule to be unworkable.

¶ 8 Nor has Oklahoma, because the idea of "greater latitude" existed in Oklahoma for many years prior to *Myers*—indeed prior to the time any of the current judges who would now do away with it were sitting on an appellate court bench.[2] For example, in *Rhine v. State*, 1958 OK CR 110, ¶ 20–21, 336 P.2d 913, 921–22, the Court cited with approval two Kansas cases, two Pennsylvania cases, and a California case that adopted a greater latitude approach to other crimes

---

**1.** In *Myers,* the Court allowed evidence of two prior sexual assaults the defendant had committed, crimes that were ten and twenty years old. Despite having different victims and wide variations in time of occurrence, the Court found the crimes were probative of intent, motive and a common plan or scheme. Only Judge Chapel would have excluded evidence that the defendant

had lured the prior victims, both acquaintances with the defendant, into a car where he sexually assaulted them and threatened to kill them.

**2.** We have shown greater latitude in the area of prior acts of spousal abuse for some time now.

evidence in sexual assault cases. In one of the Pennsylvania cases,[3] the Court stated:

That an individual who commits or attempts to commit abnormal sex offenses is likely to have such a mental 'plan' finds recognition in the fact that when a defendant is charged with the commission of sexual offense the law is more liberal in admitting as proof of his guilt evidence of similar sexual offenses committed by him than it is in admitting evidence of similar offenses when a defendant is charged with the commission of non-sexual crimes.

Additionally, both of the Kansas cases cited in Rhine admitted such evidence in order to show a "lustful disposition." *Rhine's* approach on this point was later discussed again by this Court with apparent approval in *Driskell v. State,* 1983 OK CR 22, ¶ 27–29, 659 P.2d 343, 350.[4] In that case, the expert linked two crimes together due to the progressive nature of the actions and aggression of "the sex criminal of this type." *Id.*

¶ 9 Also, in *Hawkins v. State,* 1989 OK CR 72, 782 P.2d 139, 141–42, dealing with prior uncharged acts of rape the defendant had committed against the victim, the Court cited, again with approval, this rule from *Landon v. State,* 77 Okl. Cr. 190, 140 P.2d 242, 244 (1943):

As an exception to the general rule, the courts have been very liberal in permitting evidence of other offenses involving carnal intercourse of the sexes where it is between the same parties, whether prior or subsequent to the offense charged in the information, for a reason peculiar to sexual crimes. This exception to the general rule is founded not so much upon the desire to show the intent with which the offense was committed, but more upon the broader

ground of showing sexual inclination or lustful disposition of defendant toward the prosecuting witness and making it more probable that the offense charged was committed.

The Court thus ruled it had "long been the law of this State that evidence of either prior or subsequent sexual acts between the victim and the accused constitute evidence which falls into an exception to the general rule that evidence of 'other crimes' will not be admitted to prove that a defendant acted in conformity with his prior propensities." *Hawkins,* at ¶ 10, 782 P.2d at 141.

¶ 10 This is by no means an exhaustive list of such cases. The Court has wrestled with this issue throughout its history, and there are certainly cases suggesting there is no room for greater latitude when talking about "other crimes" evidence, regardless of the crime charged. The point, however, is that *Myers* didn't simply make it up out of thin air, and the concept has been a matter of common law for decades.[5] Regrettably, the Court's myopic focus on *Myers* prevented it from understanding the lineage of this legal concept and the extent to which it is supported in our jurisprudence, jurisprudence that remains in full force and effect.

¶ 11 Moreover, if you flip through the pages of our evidence code, you will see that sex-related crimes are treated differently and that greater latitude in this area is a common theme, one that our Legislature has repeatedly recognized. Thus, an accused is prohibited from introducing evidence concerning an alleged victim's sexual past or reputation, except under specific circumstances. 12 O.S.2001, § 2412. The spousal privilege recognized in 12 O.S.Supp.2002,

---

3. *Commonwealth v. Winter,* 289 Pa. 284, 137 A. 261, 263.

4. While discussing *Driskell* and other such cases in his dissenting opinion in *Roubideaux v. State,* 1985 OK CR 105, 707 P.2d 35, 41, Judge Parks pointed out that the cases involved "sexual undertones." He then went on to state, "These cases are indicative of the fact that, rightly or wrongly, 'the courts tend to find distinctive similarities in sex cases more readily than in other situations.' *Clearly et al.,* McCormick on Evidence, § 140, p. 560, n. 20 (1984). See also 2 A.L.R.4th 330."

5. Thus, in his concurring in result opinion in *Myers,* Judge Chapel recognized that a "substantial minority of states grants some form of latitude for evidence of other crimes in sexual offense cases. Of these, the majority focus on sex crimes against children. Several states allow this evidence in any sexual offense case to explain motive and intent by showing previous propensity for sexual offenses, or on the general principle that such offenses should have liberal standards of proof."

§ 2504 does not apply when one spouse is charged with a crime against the other or a child of either. The rules against impeaching witnesses with stale convictions do not apply where "the witness is a defendant currently charged with a sexual offense involving a child...." 12 O.S.Supp.2002, § 2609. Special rules have been enacted when children are witnesses, concerning the manner of taking testimony. 12 O.S.Supp.2003, §§ 2611.2–2611.11. Sequestration rules are relaxed for the parents of child victims. 12 O.S.2001, § 2615(4). And the all-important hearsay rules are also relaxed when a child under 13 makes statements regarding physical abuse or inappropriate sexual contact. 12 O.S.Supp.2004, § 2803.1.

¶ 12 And so, I would not do away with the "greater latitude" rule in sex-related crimes, *especially* those involving children. I do not believe the rule swallows 12 O.S.2001, § 2404(B). Rather, I see it as simply one additional factor to consider when the court is looking at admissibility on the issue of motive, opportunity, intent, preparation, plan, knowledge, identity or absence of mistake or accident. Indeed, by denouncing greater latitude, we wind up in a worse place than we were, because a comparison of the cases indicates that even when the "rule" had not been announced, it was still being used. For these reasons, I must dissent to the Court's opinion in this case.

¶ 13 In closing, I would also urge our Legislature to take notice of this issue, take steps to protect those most vulnerable in our society, the children, and adopt a version of Rule 413 of the Federal Rules of Evidence in an effort to protect our children.