2009 OK CR 8

**Daniel Cole JAMES, Appellant**

**v.**

**STATE of Oklahoma, Appellee.**

No. F–2007–1052.

Court of Criminal Appeals of Oklahoma.

March 6, 2009.

Kevin Adams, Attorney at Law, Tulsa, OK, attorney for defendant at trial.

James M. Hawkins, Assistant District Attorney, Tulsa, OK, attorney for the State at trial.

Lisbeth L. McCarty, Indigent Defense System, Norman, OK, attorney for appellant on appeal.

W.A. Drew Edmondson, Attorney General, William R. Holmes, Assistant Attorney General, Oklahoma City, OK, attorneys for the State on appeal.

**OPINION**

C. JOHNSON, Presiding Judge.

¶ 1 Appellant, Daniel Cole James, was convicted by a jury in Tulsa County District Court, Case No. CF–2004–3354, of Count 1: Rape by Instrumentation (21 O.S.2001, § 1111) and Count 2: Lewd Molestation (21 O.S.Supp.2002, § 1123). The jury sentenced Appellant to 35 years imprisonment on Count 1, and to 20 years imprisonment on Count 2. On October 23, 2007, the Honorable Thomas C. Gillert, District Judge, sentenced Appellant in accordance with the jury's recommendation. This appeal followed.

¶ 2 Appellant was charged with sexually abusing B.M., the four-year-old daughter of a family friend, by placing his finger in her vagina and his penis in her mouth several times between August 2002 and May 2003. The child, who was nine years old at the time of this trial, testified that Appellant ejaculated in her mouth on more than one occasion. The State presented the testimony of B.M.'s older sister, to whom she first disclosed the allegations in 2004, and the testimony of Jamie Vogt, a forensic interviewer, who spoke with B.M. after B.M.'s mother notified the authorities. The State also presented evidence that over a decade before the instant offenses, Appellant had sexually abused a former step-daughter in a similar manner. That witness, R.G., who was eighteen years old at the time of this trial, testified that in 1992, when she was approximately three years old, Appellant placed his penis in her mouth and ejaculated on two occasions. R.G.'s mother, Appellant's ex-wife, testified to the circumstances surrounding R.G.'s disclosure of the abuse.

¶ 3 R.G.'s testimony about other acts of sexual abuse committed by Appellant had also been presented in Appellant's first trial. Appellant was convicted; on direct appeal, we held that this evidence was improperly admitted, and remanded for a new trial. We reasoned that because the jury was not properly instructed on the limited use of other-crimes evidence, it may have used that testimony as substantive evidence that Appellant sexually abused B.M. *James v. State*, 2007 OK CR 1, ¶ 4, 152 P.3d 255, 257.[1]

¶ 4 A few months after *James* was handed down, the Oklahoma Legislature enacted 12 O.S. §§ 2413 and 2414, which specifically addressed the type of other-crimes evidence challenged in that appeal. Laws 2007, S.B. 917, Ch. 76, §§ 1–2 (eff. April 30, 2007). Section 2413 applies to cases where the defendant is charged with enumerated offenses involving "sexual assault"; § 2414 applies to

---

1. In *James*, we observed that our holding in *Myers v. State*, 2000 OK CR 25, ¶¶ 21–25, 17 P.3d 1021, 1029–1030, appeared to afford "greater latitude" to trial courts in admitting evidence of other crimes allegedly committed by the accused, when the crimes involved offenses of a sexual nature. We found that concept "unworkable," and concluded that "[t]he statute on other crimes evidence, 12 O.S.2001, § 2404(B), along with our previous case law on this issue, governs the admissibility of other crimes evidence in criminal trials in Oklahoma." *James*, 2007 OK CR 1, ¶ 4, 152 P.3d at 257.

cases where the defendant is charged with crimes defined as "child molestation." 12 O.S.Supp.2007, §§ 2413(A), (D); 2414(A), (D). Each statute provides that evidence of other, specified offenses of a sexual nature "is admissible, *and may be considered for its bearing on any matter to which it is relevant"* 12 O.S.Supp.2007, §§ 2413(A), 2414(A) (emphasis added). Before Appellant's retrial, the State gave notice of its intention to admit evidence about R.G.'s claim of sexual abuse, citing these recently-enacted provisions. The trial court admitted the evidence over objection by the defense. This frames the question of a possible conflict between statutes, and the trial court's authority and obligation for a proper balance.

¶ 5 Appellant raises two propositions of error. In Proposition 1, he claims that the admission of evidence concerning R.G.'s claim of sexual abuse, pursuant to 12 O.S.Supp.2007, § 2414, violated his constitutional protection from *ex post facto laws,* because that statute was enacted after the alleged commission of the offenses against B.M.[2] U.S. Const., Art. I, §§ 9, 10; Okl. Const. art. II, § 15. We disagree. A law is *ex post facto* if it (1) criminalizes an act after the act has been committed, (2) increases the severity of a crime after it has been committed; (3) increases the punishment for a crime after it has been committed; or (4) alters the rules of evidence, allowing conviction on less or different testimony than the law required at the time the act was committed. *See*

Carmell v. Texas, 529 U.S. 513, 522–25, 120 S.Ct. 1620, 1627–29, 146 L.Ed.2d 577 (2000); *Calder v. Bull,* 3 U.S. (3 Dall.) 386, 390, 1 L.Ed. 648 (1798). It is the last variant that concerns us here, because at issue is a rule of evidence that declares certain types of evidence to be presumptively admissible in certain types of prosecutions.

¶ 6 The mere fact that a retroactively-applied change in evidentiary rules works to a defendant's disadvantage does not mean the law is *ex post facto.* The issue is whether the change affected the quantum of evidence necessary to support a conviction. *Carmell,* 529 U.S. at 546–47, 120 S.Ct. at 1640.[3] Sections 2413 and 2414 of the Evidence Code merely provide that certain types of evidence shall not be categorically inadmissible in certain types of cases. Appellant's conviction for sexually abusing B.M. did not—at least as a matter of law—stand or fall on whether the other-crimes testimony of R.G. was admissible. Legislative enactments like §§ 2413 and 2414, which merely *permit* the jury to consider certain kinds of evidence for certain purposes, and are applied to conduct committed before enactment, do not raise *ex post facto* concerns. *See Thompson v. Missouri,* 171 U.S. 380, 387, 18 S.Ct. 922, 924, 43 L.Ed. 204 (1898) (state evidentiary rule permitting evidence of handwriting exemplars, for purposes of comparison with a disputed writing, enacted after reversal of defendant's conviction and before retrial, did not raise *ex post facto* concerns);[4]

2. Appellant refers to 12 O.S. § 2413 as the applicable provision. Because both the instant charge and the other-crimes evidence involved sexual abuse of a child, § 2414 was the more applicable provision. In either event, Appellant's complaint does not depend on any differences between the two provisions, which were promulgated in the same bill and operate in essentially the same manner. Our discussion applies with equal force to both statutes.

3. For example, the state evidentiary rule at issue in *Carmell* allowed conviction for certain sex offenses on the uncorroborated testimony of the complainant—whereas, under the rules in effect at the time of the alleged offense, such uncorroborated testimony was insufficient, as a matter of law, to support a conviction. A majority of the Supreme Court found that situation to be just as unfair as reducing the number of elements the state had to prove in order to obtain a convic-

tion. *Carmell,* 529 U.S. at 532–33, 120 S.Ct. at 1632–33.

4. The situation in *Thompson* is strikingly similar to the one presented here. Thompson was tried for fatally poisoning a church sexton. In evidence were a handwritten prescription for strychnine, and a handwritten letter to the church organist, which contained threatening language about the sexton. The state introduced letters that Thompson had written to his wife, so that the jury could compare his known handwriting with that of the prescription and threatening letter. Thompson was convicted. On appeal, however, the Missouri Supreme Court held that Thompson's letters to his wife were not admissible under state law, and reversed for a new trial. Before the second trial was held, the Missouri legislature passed a law permitting the evidence that the appellate court had found inadmissible. At the second trial, the evidence was again ad-

*Neill v. Gibson,* 278 F.3d 1044, 1053 (10th Cir.2001) (Oklahoma statutes permitting jury to consider victim-impact evidence in a capital sentencing proceeding, applied to murders committed before enactment, did not raise *ex post facto* concerns); *Coddington v. State,* 2006 OK CR 34, ¶¶ 59–60, 142 P.3d 437, 453–54 (Oklahoma statutory amendment, permitting an "appropriate" *pre-mortem* photograph of the victim in a homicide prosecution, applied to homicides committed before amendment, did not raise *ex post facto* concerns). Thus, application of 12 O.S. § 2414 in Appellant's retrial did not violate constitutional protections from *ex post facto* laws. Proposition 1 is denied.

■ ¶ 7 In Proposition 2, Appellant argues that even if R.G.'s testimony was admissible under § 2414, it nevertheless should have been excluded for credibility reasons. Again, we disagree. Sections 2413 and 2414 were taken, almost *verbatim,* from Federal Rules of Evidence 413 and 414, which were promul-

gated over a decade ago. While these provisions are perhaps not models of legislative clarity, we construe the language found in both as still requiring the trial court to *balance* the probative value of the proffered evidence against any unfairly prejudicial effect, pursuant to 12 O.S.2001, § 2403.

¶ 8 Although both statutes provide that the evidence at issue "is admissible," they go on to declare that the evidence "*may* be considered for its bearing on any matter to which it is relevant." 12 O.S.Supp.2007, §§ 2413(A), 2414(A) (emphasis added). Both statutes include the proviso: "This rule shall not be construed to limit the admission or consideration of evidence under any other rule." 12 O.S.Supp.2007, §§ 2413(C), 2414(C). This proviso is a two-edged sword. Sections 2413 and 2414 should obviously not be read to bar other types of bad-acts evidence that might be proffered in a sexual-abuse case, simply because they do not specifically mention them.[5] Nor, however, should these provi-

---

mitted, and Thompson was again convicted; the Missouri Supreme Court affirmed. On *certiorari,* the United States Supreme Court rejected the notion that the Missouri law was *ex post facto* as to the defendant:

[W]e cannot perceive any ground upon which to hold a statute to be *ex post facto* which does nothing more than admit evidence of a particular kind in a criminal case upon an issue of fact which was not admissible under the rules of evidence as enforced by judicial decisions at the time the offense was committed. The Missouri statute, when applied to this case, did not enlarge the punishment to which the accused was liable when his crime was committed, nor make any act involved in his offense criminal that was not criminal at the time he committed the murder of which he was found guilty. It did not change the quality or degree of his offense.... *The statute did not require 'less proof, in amount or degree,' than was required at the time of the commission of the crime charged upon him. It left unimpaired the right of the jury to determine the sufficiency or effect of the evidence declared to be admissible,* and did not disturb the fundamental rule that the state, as a condition of its right to take the life of an accused, must overcome the presumption of his innocence, and establish his guilt beyond a reasonable doubt. Whether he wrote the prescription for strychnine, or the threatening letter to the church organist, *was left for the jury,* and the duty of the jury, in that particular, was the same after as before the passage of the statute. *The statute did nothing more than remove an obstacle arising out of a rule of*

evidence that withdrew from the consideration of the jury testimony which, in the opinion of the legislature, tended to elucidate the ultimate, essential fact to be established, namely, the guilt of the accused.... [T]he object of the legislature, as we may assume, was to give the jury all the light that could be thrown upon an issue of that character ....

*Thompson,* 171 U.S. at 386–88, 18 S.Ct. at 924–25 (emphasis added). In fact, on direct appeal after the second trial, the Supreme Court of Missouri had reached the same conclusion:

It will be observed that no particular weight is attached to the evidence of these writings when admitted. They are simply permitted as evidence before the jury. The jury are left to determine their similarity to the disputed writing, and the right to attack these writings themselves is open to the prisoner and his counsel. They are offered solely as a means of arriving at an ultimate fact. *The law raises no presumption about them, nor ascribes any special probative force to them.*

*State v. Thompson,* 141 Mo. 408, 42 S.W. 949, 952 (1897) (emphasis added).

5. For example, § 2414 declares that evidence of specified past acts of child sexual abuse committed by the defendant may be admitted in his prosecution for child sexual abuse. The statute says nothing about the admissibility of other past sex offenses, *e.g.* those involving an adult victim, in a prosecution for child sexual abuse. In such a case, the trial court would balance the probative value and unfairly prejudicial effect of the evidence under 12 O.S. §§ 2403 and 2404(B).

sions be read to absolutely trump all other evidentiary rules and constitutional concerns.[6]

¶ 9 As noted, these rules were copied from existing federal legislation, and we find the legislative history of those rules, and federal judicial interpretation of the rules, helpful to our own analysis. Both sources of guidance, and the plain language of the rules themselves, convince us that when evidence is proffered under 12 O.S. §§ 2413 or 2414, the trial court retains the authority—*and responsibility*—to consider, on a case-by-case basis, whether the probative value of the proffered evidence is substantially outweighed by an unfairly prejudicial effect.[7] 12 O.S.2001, § 2403. *Cf. Coddington,* 2006

OK CR 34, ¶¶ 53–56, 142 P.3d at 452–53 (statute permitting *pre-mortem* photo of victim in homicide trials did not strip trial court of authority to exclude such evidence, when appropriate, under other provisions of the Evidence Code).

¶ 10 Evidence that the defendant has committed sex offenses similar to those for which he is on trial will undoubtedly be prejudicial to him. The real question, however, is whether it is *unfairly* so. 12 O.S.2001, § 2403. When evidence meeting the criteria of §§ 2413 or 2414 is offered, the Evidence Code's examples of how ·other-crimes evidence may properly be used (e.g. to show motive, opportunity, or common scheme or plan), found in § 2404(B), are still helpful to

6. Thus, for example, evidence proffered under § 2413 or § 2414 might ultimately be excluded on the grounds that it is hearsay, which is governed by other provisions of the Evidence Code and by the constitutional right to confront one's accusers.

7. The same conclusion has been reached by a number of federal appellate courts, construing F.R.E. 413 and 414 in light of the extant legislative history behind them. *See United States v. Enjady,* 134 F.3d 1427, 1431 (10th Cir.1998) ("The Rule 413(a) language 'is admissible' can be read as trumping Rule 403 and requiring admission of such evidence in all circumstances. The legislative history, however, indicates that the district court must apply Rule 403 balancing and may exclude such evidence in an appropriate case"); citing 140 Cong. Rec. H8968–01, H8991 (S. Molinari Aug. 21, 1994) (*"In other respects, the general standards of the rules of evidence will continue to apply, including the restrictions on hearsay evidence and the court's authority under evidence rule 403 to exclude evidence whose probative value is substantially outweighed by its prejudicial effect . . . .* The presumption is in favor of admission") (emphasis added); *id.,* S12990–01, S12990(R. Dole, Sept. 20, 1994) ("The presumption is that the evidence admissible pursuant to these rules is typically relevant and probative, *and that its probative value is not outweighed by any risk of prejudice"*) (emphasis added); *id.,* H5437–03, H5438 (J. Kyl, June 29, 1994) (*"The trial court retains the total discretion to include or exclude this type of evidence"*) (emphasis added); *see also United States· v. Meacham,* 115 F.3d 1488, 1495 (10th Cir.1997) ("Under Rule 414 the prior acts evidence must 'still be relevant and followed by a Rule 403 balancing"); *United States v. LeMay,* 260 F.3d 1018, 1027 (9th Cir. 2001) ("[A]s long as the protections of Rule 403 remain in place so that district judges retain the authority to exclude potentially devastating evidence, Rule 414 is constitutional"); *United States*

*v. Sumner,* 119 F.3d 658, 662 (8th Cir.1997) ("[L]egislative history reveals the intent that Rule 403 should apply to the admission of evidence under Rule 414"); citing 140 Cong. Rec. H8991 (daily ed. Aug. 21, 1994) (statement of Rep. Molinari) ("The practical effect of the new rules is to put evidence of uncharged offenses in sexual assault and child molestation cases *on the same footing as other types of relevant evidence that are not subject to a special exclusionary rule"*) (emphasis added); *United States v. Julian,* 427 F.3d 471, 487 (7th Cir.2005) (F.R.E. 413 does not "displace the court's authority pursuant to Rule 403 to exclude evidence of a prior assault if its probative value is substantially outweighed by the danger of unfair prejudice"); *United States v. Seymour,* 468 F.3d 378, 385 (6th Cir.2006) (trial court properly applied Rule 403 balancing test to evidence proffered under Rules 413–14); *United· States v. Guidry,* 456 F.3d 493, 503 (5th Cir.2006) ("We join our sister circuits in holding that, subject to other admissibility considerations, Rule 413 allows the admission of other sexual assaults. . . . A district court must apply the Rule 403 balancing test when considering the admission of evidence under Rule 413, and in the instant case, it did"); *United States v. Kelly,* 510 F.3d 433, 437 (4th Cir.2007) ("[A]s is true of all admissible evidence, evidence admitted under Rule 414 is subject to Rule 403's balancing test"); *Johnson v. Elk Lake School Dist·,* 283 F.3d 138, 155 (3rd Cir.2002) ("It appears from the legislative history of Rules 413–15, however, that despite the seemingly absolutist tone of the 'is admissible' language,. Congress did not intend for the admission of past sexual offense evidence to be mandatory; rather, Congress contemplated that Rule 403 ·would apply"); *United States ·v. Larson,* 112 F.3d 600, 604–05 (2d Cir.1997) ("We view Rule 403 analysis in connection with evidence offered under Rule 414 to be consistent with Congress's intent as reflected in the legislative history").

the trial court's assessment of probative value, and, consequently, in balancing probative value against unfairly prejudicial effect under § 2403. As we have observed many times, the probative value of other crimes committed by the accused increases when there is a visible connection between the crimes, or when all of the offenses, taken together, demonstrate a common scheme or plan. *See e.g. Burks v. State,* 1979 OK CR 10, ¶ 8, 594 P.2d 771, 773; *Rhine v. State,* 1958 OK CR 110, ¶¶ 19–21, 336 P.2d 913, 920–22.

¶ 11 The trial court did not abuse its discretion in permitting testimony about R.G.'s claim of sexual abuse at the hands of Appellant. Under 12 O.S. §§ 2413 and 2414, the evidence was admissible for any relevant purpose. The particulars of the prior crime showed a visible connection with the instant charges, and demonstrated a common scheme to take sexual advantage of very young girls that were placed in his trust and care.[8] More than once, the trial court cautioned the jury on the limited use of such evidence.[9] Proposition 2 is denied.[10]

## DECISION

¶ 12 The Judgment and Sentence of the district court is **AFFIRMED.** Pursuant to Rule 3.15, *Rules of the Oklahoma Court of Criminal Appeals,* Title 22, Ch.18, App. (2008), the **MANDATE** is **ORDERED** issued upon the delivery and filing of this decision.

A. JOHNSON, V.P.J.; LUMPKIN and LEWIS, JJ.: concur.

CHAPEL, J.: dissents.

CHAPEL, J., Dissenting:

¶ 1 James claims that evidence of other crimes should not have been admitted to prove the charges against him. I agree. I believe that 22 O.S.Supp.2007, §§ 2413(C) and 2414(C), the statutes allowing admission of other crimes evidence in sexual abuse cases, are unconstitutional. The statutes violate both the due process and equal protection clauses of the United States Constitution as well as the Oklahoma constitution.[1] Because I would hold the statutes unconstitutional I express no opinion on the *ex post facto* issue. I would reverse James's case and remand for a new trial with appropriate evidence. I dissent.

---

8. Both the instant offense and the past offense involved girls about the same age. Both girls gave contemporaneous descriptions of Appellant's conduct that were eerily similar to each other. Although the incidents were separated by several years, remoteness in time is only one of many factors for the trial court to balance under 12 O.S. § 2403. Certainly, if a witness fails to report a claim of abuse for several years, that fact might bear on the credibility of the witness's claim. But such a delay might also be reasonably explained, such as by the witness's age, and whether the defendant threatened the witness with harm if she disclosed. In this case, R.G. reported the claim of sexual abuse when she was four years old, about a year after it allegedly occurred. Her mother promptly reported the allegation to police. Ultimately, for reasons not apparent from the record, the district attorney declined to file charges. R.G.'s testimony was brief, positive, and corroborated by that of her mother, to whom R.G. spontaneously reported the abuse. Although R.G. was eighteen at the time of this trial, she still claimed a vivid recollection of important details about the incidents.

9. *See* OUJI–CR (2nd) No. 9–9. The trial court gave this instruction immediately after R.G.'s direct examination: "[E]vidence has now been received that the defendant has allegedly committed offenses other than that charged in the information. You may not consider this evidence as proof of innocence or guilt of the defendant of the specific charge—of the specific offense charged in the information. This evidence has been received solely on the issue of the defendant's alleged motive, common scheme or plan. This evidence is to be considered by you only for the limited purpose for which it was received." This caution was repeated in the final instructions given after the close of the evidence.

10. Appellant also makes a cursory complaint of prosecutor misconduct in Proposition 2. Because he fails to explain the legal basis for this complaint, we will not consider it. Rule 3.5(A)(5), *Rules of the Oklahoma Court of Criminal Appeals,* 22 O.S., Ch. 18, App. (2009).

1. I discussed my view thoroughly in *Horn v. State,* 2009 OK CR 7 (Chapel, J., dissenting).