2011 OK CR 4

Carlos **CUESTA–RODRIGUEZ**, Appellant,

v.

The **STATE** of Oklahoma, Appellee.

No. D–2007–825.

Court of Criminal Appeals of Oklahoma.

Jan. 25, 2011.

---

### ORDER DENYING PETITION FOR REHEARING AND MOTION TO RECALL MANDATE

¶ 1 Before the Court is Cuesta–Rodriguez's Petition for Rehearing and Motion to Recall Mandate. For the reasons set out below, the petition and motion are denied.

#### 1.

¶ 2 Cuesta–Rodriguez first seeks rehearing on the trial court's refusal to issue a jury instruction on the defense of voluntary intoxication. Cuesta–Rodriguez contends that we overlooked his claim that the trial court's refusal to instruct the jury on the defense of voluntary intoxication violated his constitutional due process rights to present a defense and to receive a fair trial.

¶ 3 As an initial matter, we did not overlook Cuesta–Rodriguez's constitutional claims. In fact, we expressly acknowledged them.[1] Although we did not explicitly find that Cuesta–Rodriguez's constitutional rights

were not violated, we implicitly determined there was no due process error by finding that the trial court judge properly exercised his discretion when he refused to instruct the jury on the defense of voluntary intoxication. In other words, by explicitly finding that the trial court judge determined correctly as a matter of law that Cuesta–Rodriguez was not entitled to a voluntary intoxication instruction, we necessarily found no due process violation. Cuesta–Rodriguez fails to show that we have overlooked a duly submitted question decisive of the case.[2] Rehearing is not warranted on this claim. *See* Rule 3.14(B), *Rules of the Oklahoma Court of Criminal Appeals,* Title 22, Ch.18, App. (2010) (petition for rehearing must show that "(1) [s]ome question decisive of the case and duly submitted by the attorney of record has been overlooked by the Court, or (2)[t]he decision is in conflict with an express statute or controlling decision to which the attention of this Court was not called either in the brief or in oral argument").

#### 2.

¶ 4 Cuesta–Rodriguez next asks that we reconsider our decision on the voluntary intoxication instruction because, he asserts, it was wrongly decided as a result of our reference to *Charm v. State,* 1996 OK CR 40, ¶ 13, 924 P.2d 754, 761. Cuesta–Rodriguez contends that *Charm* was overruled by *Malone v. State,* 2007 OK CR 34, ¶ 22 n. 48, 168 P.3d 185, 197 n. 48. Cuesta–Rodriguez called our attention to both *Charm* and *Malone* in his brief-in-chief and argued there, as he does here, that *Charm*'s test for an entitlement to a voluntary intoxication instruction was replaced by the test set out in *Malone*. Because these two cases were brought to our

---

1. *See Cuesta–Rodriguez v. State,* 2010 OK CR 23, ¶ 10, 241 P.3d 214, 223 ("Cuesta–Rodriguez claims that his constitutional rights to due process and to present a defense were denied by the trial court's refusal to issue a jury instruction on the defense of voluntary intoxication").

2. In his brief-in-chief, Cuesta–Rodriguez alleged constitutional error (i.e., due process error in violation of the Fifth, Sixth, and Fourteenth Amendments to the United States Constitution, and Article 2 Section 9 of the Oklahoma Constitution) in two places: (1) in his proposition heading, and (2) in his concluding sentences for

that section. Otherwise, his argument concerning the voluntary intoxication jury instruction focused entirely on supporting his assertion that the "trial court made two erroneous rulings in denying Mr. Cuesta–Rodriguez's theory of defense instructions" (Aplt's Brief at 17). Therefore, despite couching his claim in terms of constitutional due process error, the bulk and substance of Cuesta–Rodriguez's argument was that the trial court judge abused his discretion by committing an error of law in denying the instruction.

attention during the pendency of the appeal, rehearing is not warranted. *See* Rule 3.14(B)(2), *Rules of the Oklahoma Court of Criminal Appeals,* Title 22, Ch.18, App. (2010) (explaining that a petition for rehearing may only be filed if "[t]he decision is in conflict with an express statute or controlling decision to which the attention of this Court was *not* called either in the brief or in oral argument") (emphasis added). Nevertheless, to avoid confusion over our reference to *Charm,* a decision that has not been expressly overruled, we take this opportunity to clarify our decision.

■ ¶ 5 In *Charm,* this Court held that for a defendant to be entitled to a jury instruction on the defense of voluntary intoxication, the evidence must be sufficient to raise a reasonable doubt concerning the defendant's ability to form the specific intent to kill. *Charm,* 1996 OK CR 40, ¶ 13, 924 P.2d 754, 761. In *Malone,* however, we held that "voluntary intoxication instructions should be given when evidence has been introduced at trial that is adequate to raise that defense, i.e., to establish a prima facie case of voluntary intoxication, as that defense is defined under our law." *Malone,* 2007 OK CR 34, ¶ 22, 168 P.3d at 196 (citing *Jackson v. State,* 1998 OK CR 39, ¶ 65, 964 P.2d 875, 892 (per curiam) ("The test used should be no different from the test used on any other defense. When sufficient, prima facia [sic] evidence is presented which meets the legal criteria for the defense of voluntary intoxication, or any other defense, an instruction should be given")). In our decision in Cuesta–Rodriguez's case, our reference to *Charm* was not for its holding that the defendant's burden is to raise a reasonable doubt as to his ability to form the specific intent to kill. Rather, we referred to *Charm* for its rationale that mere conflicting evidence on the level of intoxication provides insufficient evidence of impairment to warrant a voluntary intoxication instruction. We believe this reasoning is valid regardless of whether the standard being applied is *Charm*'s reasonable doubt test or *Malone*'s prima facie test.

¶ 6 Furthermore, despite our reference to *Charm,* in deciding Cuesta–Rodriguez's voluntary intoxication claim, we actually cited to

and applied the *Malone* prima facie test. And applying the *Malone* prima facie test alone, without reference to *Charm,* we again reach the same result.

■ ¶ 7 Prima facie evidence is evidence that is "good and sufficient on its face," i.e., "sufficient to establish a given fact, or the group or chain of facts constituting the defendant's claim or defense, and which if not rebutted or contradicted, will remain sufficient to sustain a judgment in favor of the issue which it supports." *Black's Law Dictionary* 1190 (6th ed. 1990); *Ball v. State,* 2007 OK CR 42, ¶ 29 n. 4, 173 P.3d 81, 90 n. 4. Under our law, the requirements for establishing a voluntary intoxication defense are: (1) the defendant was intoxicated; and (2) he was "so utterly intoxicated, that his mental powers [were] overcome, rendering it *impossible* for [him] to form the specific criminal intent ... element of the crime" (emphasis added). *Simpson v. State,* 2010 OK CR 6, ¶ 28, 230 P.3d 888, 899; *see also McElmurry v. State,* 2002 OK CR 40, ¶ 72, 60 P.3d 4, 23. Under the *Malone* prima facie test, therefore, for Cuesta–Rodriguez to have been entitled to a jury instruction on voluntary intoxication, the evidence must have been sufficient on its face to establish not only that he was intoxicated, but also that he was so utterly intoxicated that his mental powers were overcome to the extent that it was *impossible* for him to form the specific intent to commit first degree murder. *See Frederick v. State,* 2001 OK CR 34, ¶ 130, 37 P.3d 908, 942 ("[m]ere consumption of alcohol and marijuana is not sufficient to raise the voluntary intoxication defense without a showing that it prevented defendant from forming a premeditated intent"). This is a high standard whose threshold cannot be met simply by presenting conflicting evidence of a defendant's level of intoxication.

¶ 8 As set out in our Opinion, the evidence in this case showed that Cuesta–Rodriguez did consume some liquor before the murder. Under questioning by police, for example, Cuesta–Rodriguez said that he consumed three shots of tequila several hours before the shooting, but he also denied that he consumed enough to make him drunk. Cuesta–Rodriguez also told police that he acted

out of anger toward the victim, not as a result of having consumed alcohol. Although the victim's daughter, Katya Chacon, described Cuesta–Rodriguez as "stupid drunk" on the night of the murder, she also testified that he was steady on his feet and talking clearly. Detective Dupy testified that Cuesta–Rodriguez smelled of alcohol at 9:15 a.m., four hours after the shooting, but stated in his report that Cuesta–Rodriguez appeared only slightly intoxicated.

¶ 9 Furthermore, Cuesta–Rodriguez remembered events well enough to give police a detailed account of the shooting and the circumstances surrounding it. In particular, Cuesta–Rodriguez told police about how Katya Chacon struck him with a baseball bat while he and Chacon's mother, the victim, Olimpia Fisher, argued. Cuesta–Rodriguez described in detail how he retrieved his handgun from his closet, placed it in his back pocket, returned to quarreling with Fisher, and then how he pulled the gun from his pocket and discharged it into Fisher's face, as he and she struggled hand-to-hand. Cuesta–Rodriguez also explained that after the first gunshot to Fisher's face, he carried her, still-alive, into another room and then shot her a second time. Specifically, Cuesta–Rodriguez responded to questioning by Detective Carson as follows:

Carson: You shot the gun twice?

Cuesta: Yeah, I don't know when I did the other shot. But I do remember—

Carson: What did she do when you shot her the second time?

Cuesta: Well, she fell on the ground.

(State's Exhibit 43; Court's Exhibit 4 at 17).[3] Returning to the subject of the second shot later in the interview, Detective Carson engaged Cuesta–Rodriguez in the following exchange:

Carson: Okay. After the gun went off, Katya ran out of the room, is that right?

Cuesta: Yeah.

**3.** State's Exhibit 43 is a videotape of Cuesta–Rodriguez's interview with Detective Carson. Court's Exhibit 4 is a transcript of the audio portion of the tape. The videotape was played

Carson: Then you picked up Olimpia and took her to your bedroom. Is that correct?

Cuesta: Yeah, well, she kinda walking to my bedroom. Carson: Okay. But you're holding, helping to the bedroom.

Cuesta: Yeah.

Carson: Once in your bedroom, and you get her into another, did you get into another fight?

Cuesta: Yeah, she was punching me, kicking me.

Carson: Okay, but she's bleeding pretty bad isn't she?

Cuesta: Yeah, she was bleeding, I said.

Carson: Where was she bleeding from?

Cuesta: From her eyes.

Carson: From her eyes? And where was she at when you shot her a second time?

Cuesta: Right there by our bed.

Carson: Right there by the bed, standing up or was she on the ground, Carlos, tell me the truth.

Cuesta: We were standing up.

Carson: And then after you shot her, what did she do then the second time?

Cuesta: She just fall to the ground.

(State's Exhibit 43; Court's Exhibit 4 at 20–21).

 ¶ 10 In a case like the current one, where the defendant provides a detailed description of the circumstances and events leading up to and including his own act(s) of killing the victim, the very fact that the defendant was aware of his circumstances and able to recognize what was happening at the time suggests that he will not be able to make even a prima facie showing that he was so intoxicated that it was *impossible* for him to have formed a specific intent to kill his victim. *See Jackson v. State*, 1998 OK CR 39, ¶¶ 68–70, 964 P.2d 875, 892 (finding voluntary intoxication defense instruction not required where defendant gave detailed factual account of interactions with victim up until time of homicide and immediately thereaf-

for the jury, and jurors were given copies of the transcript. Both Cuesta–Rodriguez and the State stipulated that the transcript was accurate.

ter). This is because the level of intoxication from alcohol consumption that is sufficient to raise a voluntary intoxication defense would typically be accompanied by a marked diminishment of awareness, a decreased ability to focus, as well as substantial impairment of motor functioning. *Cf. Jackson,* 1998 OK CR 39, ¶ 68, 964 P.2d at 892. Furthermore, a defendant who explains why he killed the victim, i.e., a defendant who offers a reason for his *decision* to kill the victim, in essence, acknowledges that the act of killing was done with the specific intent to kill. This in itself forecloses the possibility of a voluntary intoxication defense.

¶ 11 While there was evidence in the record suggesting that Cuesta–Rodriguez was intoxicated, we conclude that the evidence was *not* sufficient to establish an entitlement to a jury instruction on the voluntary intoxication defense. One witness's description of Cuesta–Rodriguez as "stupid drunk" was not adequate to establish a prima facie case of this defense, particularly in light of Cuesta–Rodriguez's own coherent and detailed description of what occurred on the night of the homicide. Moreover, Cuesta–Rodriguez's statement that he acted out of anger toward the victim, not intoxication, is an admission that he acted with culpable purposeful intent. Having clarified our previous analysis, we again conclude that the trial court did not abuse its discretion by not instructing Cuesta–Rodriguez's jury on the voluntary intoxication defense.

**3.**

■ ¶ 12 Cuesta–Rodriguez also seeks rehearing on the grounds that we did not address his assertion that the Eighth and Fourteenth Amendments to the United States Constitution, as well as Article 2, Section 9, of the Oklahoma Constitution, required the trial court to instruct the jury during the sentencing stage of his trial that in Oklahoma intoxication can mitigate a crime. Cuesta–Rodriguez advanced this argument in his brief-in-chief in a single sentence at the end

of his claim alleging that the trial court violated his constitutional rights during the guilt phase by refusing to issue a voluntary intoxication instruction (*See* Aplt's Brief at 20–21). This cursory assertion, made as a passing remark in a longer argument, was not supported by any independent argument or authority, nor was it set out as a separate proposition of error as required by our rules. *See* Rule 3.5(A)(5) and (C)(1), *Rules of the Oklahoma Court of Criminal Appeals,* Title 22, Ch.18, App. (2007); *Skinner v. State,* 2009 OK CR 19, ¶ 33, 210 P.3d 840, 852 (finding that argument in appellant's brief that "merely gestures at a true *Brady* claim and a 'newly discovered evidence' claim, without coming close to fully developing either," is waived under Rule 3.5); *James v. State,* 2009 OK CR 8, ¶ 11 n. 10, 204 P.3d 793, 798 n. 10 (refusing under Rule 3.5 to consider cursory complaint of prosecutor misconduct where appellant failed to explain legal basis for claim); *Stouffer v. State,* 2006 OK CR 46, ¶ 126, 147 P.3d 245, 270 (citing Rule 3.5 and stating "[i]t is well established this Court will not search the record to support the appellant's unsupported assignments of error, nor review allegations of error, which are not supported by legal authority"). Because the argument was not properly presented, it was not addressed, and does not now warrant rehearing. *See* Rule 3.14(B), *Rules of the Oklahoma Court of Criminal Appeals,* Title 22, Ch.18, App. (2010)("A petition for rehearing shall not be filed, as a matter of course, but only ... [if] ... (1) [s]ome question decisive of the case and *duly*[4] submitted by the attorney of record has been overlooked by the Court, or (2) [t]he decision is in conflict with an express statute or controlling decision to which the attention of this Court was not called either in the brief or in oral argument")(emphasis added).

**4.**

■ ¶ 13 Lastly, Cuesta–Rodriguez seeks rehearing on his claim that the State failed to give proper notice that Detective

---

**4.** *Black's Law Dictionary* defines "duly" as:
In due or proper form or manner; according to legal requirements. Regularly; properly; suitable; upon a proper foundation, as distinguished from mere form; according to law in both form and substance.
*Black's Law Dictionary* 501 (6th ed. 1990).

Steve Carson would testify as a crime scene reconstruction expert rendering an opinion about spattered blood. In his brief-in-chief, Cuesta–Rodriguez's proposition of error alleged:

> The State of Oklahoma failed to comply with the Oklahoma Criminal Discovery Code and Okla. Stat. Tit. 21, § 701.10 when the prosecutors failed to give a summary of Steve Carson's anticipated testimony.

(Aplt's Brief at 38). In connection with this proposition, Cuesta–Rodriguez asserted that "[t]he State filed a Summary of Witness Testimony on October 21, 2004 [and] Detective Carson is not listed in that summary" (Aplt's Brief at 39). We found no merit to this claim because the record of the trial court proceedings actually contained a notice that Detective Carson would testify, and that notice gave a brief summary of Carson's anticipated testimony.

¶ 14 Although Cuesta–Rodriguez's brief-in-chief mentioned in passing that Detective Carson testified about blood spatter, and also mentioned that defense counsel objected to the testimony on the grounds of lack of notice that Carson would testify as a crime scene reconstruction expert, Cuesta–Rodriguez never explicitly argued on appeal, as he does now, that the trial court improperly allowed Detective Carson to testify as a blood spatter expert because the State failed to provide explicit notice that he would provide such testimony. This post-decision reframing of the issue fails to show that we overlooked some duly submitted question decisive of the case, or that our decision conflicts with an express statute or controlling decision not brought to our attention in the briefs or at oral argument. Rule 3.14(B), *Rules of the Oklahoma Court of Criminal Appeals,* Title 22, Ch.18, App. (2010). Hence rehearing is not warranted on this claim.[5]

¶ 15 **IT IS THEREFORE THE ORDER OF THE COURT** that the Petition for Rehearing is *DENIED,* the Motion to Recall Mandate is **DENIED,** and the mandate previously issued in this case shall remain in effect.

¶ 16 **IT IS SO ORDERED.**

/s/ Arlene Johnson
ARLENE JOHNSON, Presiding Judge

/s/ David B. Lewis
DAVID B. LEWIS, Presiding Judge

/s/ Gary L. Lumpkin
GARY L. LUMPKIN, Judge

/s/ Charles A. Johnson
CHARLES A. JOHNSON, Judge

/s/ Clancy Smith
CLANCY SMITH, Judge

---

5. Despite Cuesta–Rodriguez's failure to meet the rehearing criteria set out in Rule 3.14(B), we have nevertheless re-examined Detective Carson's testimony and determined that it was not in the nature of expert testimony as Cuesta–Rodriguez alleges. In the testimony at issue, Detective Carson answered the prosecutor's questions about how Cuesta–Rodriguez would had to have been positioned relative to the victim at the time he shot her in the face in order for her blood to spatter onto Cuesta–Rodriguez's back. We agree with the trial court that this testimony was just a matter of common sense, not expert opinion. Furthermore, we believe that the summary of Detective Carson's testimony, which stated that he "[w]ill testify consistently with reports previously provided and preliminary hearing testimony ... [w]ill sponsor consent to search 807 S.W. 47th obtained from Katya Chacon ... [w]ill sponsor video taped confession of defendant ... [w]orked the crime scene at 807 S.W. 47th," was sufficient to put Cuesta–Rodriguez on notice that the detective might testify about how the shooting occurred based on his observations of the crime scene evidence and his questioning of Cuesta–Rodriguez. *See Frederick v. State,* 2001 OK CR 34, ¶ 29, 37 P.3d 908, 923 (explaining that Oklahoma Criminal Discovery Code at 22 O.S. § 2002 requires only summary of witness testimony and "[a] summary, by definition, cannot be expected to be a verbatim script of a witness's testimony").